# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    SUPERIOR COURT
Civ. Act. No. 1981CV02353

**RECEIVED**

11/15/2019

JEANNINE KELLY,
                    Plaintiff

        v.

LAHEY HOSPITAL AND MEDICAL
CENTER,        Defendant

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**Introduction**

1. Lahey Hospital and Medical Center (hereinafter "Lahey" or (LHMC") has committed to its duty to pay individuals performing comparable or substantially equal work equal pay, and not to discriminate on the basis of gender in any way. Lahey guaranteed that all employment decisions would be in accord with this policy and that it would monitor compliance with it.

2. Plaintiff Jeanine Kelly (hereinafter "Kelly"), a female,  brings this action to recover unpaid wages based on Lahey paying a male Medical Technologist a starting pay at a rate 22% more than the rate it paid to her, and to recover the subsequent compensation she would have received if she had been hired at a rate equal to the rate paid to the male Medical Technician, (hereinafter referred to as "N.M.").  Starting salaries significantly affected all subsequent compensation at Lahey. Once they elevated the pay of the new male, Lahey did not increase the pay of the females performing comparable work.

3. Lahey also paid numerous other women less than the highly paid male with minimum qualifications; Lahey was overtly or implicitly biased against women hired with at least

1

similar qualifications who have also been damaged in every subsequent paycheck, and in every subsequent raise and benefit calculation based on their discriminatory previous salary.

4.   Kelly discussed the wages of herself and others with colleagues, complained of this inequity regarding herself and others by complaining internally, and to the EEOC, while continuing to receive outstanding reviews for her work, patience and kindness. Because of her opposition to unlawful conduct Lahey improperly engaged in retaliatory action toward her and the class of Medical Technologists and Senior Medical Technologists for whom she was advocating.

5.   Shortly after reviewing Ms. Kelly's complaint, Lahey lowered the base pay of all Medical Technologists, and Senior Medical Technologists, to exclude a shift differential from the definition of base pay; this manipulation of the base pay lowered the rate at which other compensation, including promotion and merit pay and some benefit rates, are calculated. This manipulation sent a message to Ms. Kelly and to the class of all female Medical Technicians and Senior Medical technicians paid less than the newly hired male that those who make pay complaints do so at their peril …that Lahey is prepared to damage third parties because of protected conduct.

6.   N.M., the higher paid male who succeeded Kelly into the entry level position of Medical Technologist shortly before she was promoted in 2016 to Senior Medical Technologist, had insufficient education and training, and proved unqualified to learn all aspects of his position. He was unable to safely meet the demands of the patients, doctors and other requirements. When these deficiencies were called to his attention, he left after about one year, while before the end of one-year Lahey had found Kelly to

exceed expectations and had identified her as a "role model" exemplary employee. This disparity shows that Kelly was at least as qualified as N.M., who was paid substantially more, and indicates that gender discrimination was operating.

7.  Kelly brings this case on behalf of herself and all other similarly situated women who have been forced to do comparable work for Lahey without equal pay, who have been damaged by  gender discrimination in compensation and terms and conditions of work, as well as by conduct failing to investigate and remedy pay disparity. She also asserts claims for retaliatory conduct to discourage complaints of pay inequity and disparage Ms. Kelly which caused her severe emotional distress, and caused her damage in her enjoyment of life, and warrants all the relief available under both G.L. c. 105A and c. 151B, Title VII and the Equal Pay Act.

### Parties

8.  Plaintiff Jeannine Kelly ("Kelly") is a resident of 13 Dogwood Cir., Pelham, NH 03076,

9.  Defendant Lahey Hospital and Medical Center ("Lahey" or "LHMC" is a nonprofit corporation headquartered in 41 Mall Road, Burlington, Massachusetts in the county of Middlesex.

### Factual Allegations

10. Defendant Lahey is and has been at all times relevant an employer of Kelly, and is an employer subject to the Massachusetts Equal Pay Act, M.G.L. c.149 §105A (hereinafter "MEPA"), M.G.L. c. 151B, and Executive Order 11246, Title VII of the Civil Rights Act of 1964, and the Equal Pay Act 29 U.S.C. §206(d).

**Policies and Practices**

11. For all times relevant Lahey acknowledges its knowledge and awareness of a duty, and a commitment to maintain a compensation system free of bias based upon gender or protected status.

12. A Massachusetts employer must have written protocols and written practices to prevent, investigate and remedy gender bias and to ensure equal employment opportunity for males and females in hiring, in compensation, and to avoid conduct which would deter a reasonable person from making a complaint of discrimination in good faith.

13. Lahey has such a policy, See, Lahey's Equal Employment Opportunity Policy Attached as Exhibit A. ("EEO" policy), which guarantees all colleagues and job candidates equality of employment opportunity.

14. Lahey's EEO policy is intended to ensure that all employment decisions are in accordance with the LHMC EEO policy, that Human Resources will monitor compliance with EEO policy, that LHMC will  take all necessary steps to ensure each colleague's work environment is free of discrimination, and that all compensation decisions will be made without regard to gender, solely based on an individual's job related qualifications and ability with respect to essential job functions.

15. The Lahey EEO policy states that colleagues will not be subjected to discrimination or unlawful retaliation because they have raised an allegation of discrimination. Lahey has a duty not to discourage complaints of discrimination, and to investigate remedy and deter discrimination.

The duty to treat women equally in pay and terms and conditions of work is of vital importance and vindicates an important public policy of Massachusetts and the U.S., supplying women with fundamental quality and fairness to advance in their careers

equally to men, revenue to support their families, to generate demand in the economy and to provide for sickness and health and retirement equally to men.

16. For all times relevant, Lahey was aware that Massachusetts has required equal pay for comparable work under MEPA since 1945, and continues to require comparable work for substantially equal positions,  with comparable skill effort and responsibility, under MEPA as most recently amended in July 1, 2016, which also bars any discrimination on the basis of gender in any way.

17. Lahey's Human Resources policies and practices must be practiced and administered to implement this duty under MEPA.

18. To ensure equal or comparable pay for equal or comparable work, an employer must review work actually performed, and not rely upon pay grades or titles alone.

19. Failure to conduct a thorough and detailed self-evaluation of pay practices prior to the filing of this suit and to have made progress to remediate inequities found, makes gender bias more likely and makes Lahey liable for liquidated damages for gender inequity.

20. An employer may use education and experience relevant to the performance of the job, but must do so in an equal manner regardless of gender.

21. Documented review of comparators' references and experience, reduces gender bias.

22.  At all relevant times the Lahey starting base pay rate at which Medical Technologists were hired would determine future merit and promotional increases.

23. Up through at least 2017, Lahey determined the rate for employees promoted into new positions based on an increase over the employee's then current base pay rate. (MCAD response p.2).

24. At all times relevant, Lahey used defined salary grades for Medical Technicians, also identified as acute lab technicians. Since 2016, Lahey has labeled progressive levels of job grades for such Medical Technician as "L2" (formerly classified as 11L), and Senior Medical Technician as "L3", with minimum, midpoint and maximum pay schedules for each "Acute Lab" positions on "Salary plan A100". These pay grades and salary plan were used to determine and guide pay and promotion decisions.

25. Lahey has had a history of practices which discriminated on the basis of gender in compensation. The Office of Federal Contract Compliance Programs ("OFCCP") investigators determined that, from 2010 to 2012, the Lahey Clinic failed to pay certain female housekeepers — predominantly Haitian, Creole-speaking African Americans — at the same rate as their male counterparts. In its agreement with OFCCP, the Lahey Clinic agreed to pay the affected women $190,000 in lost wages, interest and salary adjustments.

26. Lahey has had a practice of discrimination in hiring, which put them on notice of how implicit and conscious bias can cause discrimination in hiring. In 2009, Lahey paid $136,000 to settle OFCCP allegations of hiring discrimination affecting 18 minorities — mostly Hispanic and Asian Americans — who applied and were rejected for secretarial positions.

**Unequal pay of Kelly with male comparators**

27. In May 2016 Lahey haired a male, ("N.M.") to perform the same job that Kelly was performing. Lahey required of both substantially similar skill, effort and responsibility under similar working conditions.

28. They both had substantially similar job titles and job descriptions as Medical Technicians at Lahey Hospital & Medical Center ("Lahey" or "LHMC") By offer of

April 15, 2016, effective by both held "job code 317901" which was level L2, formerly "11L".

29. Both Kelly and N.M worked in LHMC's flagship Burlington Hospital location, "Burl-4". Other smaller locations, within Lahey, such as Peabody Hospital. performed less complex tests while the more complex tests were sent to Burlington.

30. Both Kelly and N.M. worked on the night shift in the same Lahey lab providing heterogeneous lab services such as Microbiology, Chemistry, Hematology, Blood bank, and Urinalysis, testing, often with far less supervision than the day shift. On the day shift, Medical Technologists often worked in separate departments doing only specialized tests involving only one such arena, and had more supervision.

31. The night shift performs tests under additional stress including surgery being underway with multiple types of tests required under high priority time constraints.

32. At the time of the hire of N.M, Kelly was in job code 317901, grade L2, Medical Technologist, and had more experience, more certification, a higher degree and more seniority than he. Kelly had proven and documented  excellent skill, effort ,and responsibility, in her annual evaluations after almost two years at Lahey working with minimal supervision at an exemplary level;   before starting, she had a Bachelor's Degree in Medical Technology with internship training as part of her education in five areas of testing, Hematology, Coagulation, Chemistry, Microbiology, Blood Bank, Urinalysis, Arterial Blood Gas analyzing, and Specimen Processing  (one at Lahey) and she had passed exams to be certified in all those areas as a A.S.C. P. "Senior Medical Scientist", and ten years of experience in a fast paced professional role as an excellent and licensed real estate broker before obtaining that degree.  Lahey considered her to

7

have met the minimum qualifications for Medical Technician at Lahey, with the ability to learn the additional skills and testing required by the position.

33. At N.M.'s hire, also into job code 317901, grade L2, N.M. submitted ASCP board of certification as a "Medical Lab Technician", a lower certification than Kelly's "Senior Medical Scientist" credential, which did not permit him to perform specific tests which required a bachelor's degree. He also had an associate's degree and ten years' experience only in hospital-based Chemistry testing, and no Lahey seniority or Lahey internships. Without assessing his ability training or experience in Hematology, Coagulation, Chemistry, Microbiology, Blood Bank, Urinalysis, Arterial Blood Gas analyzing, and Specimen Processing, Lahey considered him to meet the minimum qualifications for Medical Technician at Lahey, with the ability to learn the additional skills and testing required by the position.

34. Kelly had greater documented ability to handle stress which is recognized as greater effort; she had greater discretion, accountability and duties themselves, including training N.M, which establishes greater responsibility.

35. Because of her seniority, her skill effort and responsibility combined, including further training and increased responsibilities, about the same time as N.M. was hired, between March 28, 2016 and effective May 28, 2016, Manager Donna Richards of Lahey decided to promote Kelly to Senior Medical Technologist,

36. To become a Senior Medical Technologist, the candidate was nominally required to have a bachelor's degree in Medical Technology, and two years at Lahey, or an associate's degree and 20 years of working at Lahey.

37. Kelly was promoted effective May 28, 2016 to Senior Medical Technologist with her bachelor's degree and before her second-year anniversary at Lahey.

38. As of May 28, 2016, when Kelly became qualified for and promoted into Sr. Medical Technologist and Moore was not qualified for that position, as N.M. had only an associate's degree with 10 years' experience in total and no years at Lahey.

39. N.M.'s ten prior years of experience in Chemistry alone outside of Lahey were not relevant to Ms. Kelly's pay in her initial or her higher position as he performed work of a lower skill, effort and responsibility often under her direction, guidance and instruction, and for a great deal of the work required on the night shift he did not have any prior experience.

40. N.M.'s additional years of experience performing Chemistry tests alone with an associate degree is not relevant or reasonably related to the job of Medical Technician and does not warrant a pay disparity of 22%.

41. N.M.'s additional years of experience performing Chemistry tests alone with an associate degree is also not relevant or reasonably related to the higher job of Senior Medical Technician job in question to permit a pay disparity of 14%.

42. Lahey, by the same decision-maker Manager Donna Richards, determined Kelly would receive a promotional increase rate of 6.87% based on her prior pay, (which was only $2/more per hour) for a rate of $31.07. This was significantly less than Richards authorized Lahey to pay to N.M., the male newly hired in April 2016 at $35.50 whom she hired into the lower, Medical Technologist position.

43. Kelly's superior qualifications in other areas more than outweighed N.M.'s additional years of experience in Chemistry alone, and she was at least as qualified as N.M. and A.P.

44. Beginning in May 2, 2016, when Lahey hired and paid Moore a starting pay at a rate of $35.50, his rate was 24.6% more than Kelly's earlier starting rate of $28.50 on September 8, 2014 into the same position, with the same job description, then called Medical Technologist grade 11L.

45. Lahey recorded Kelly having a 2% raise by June 2016, paying Kelly a rate of $29.07, after her almost two years seniority at Lahey, excellent reviews and performing tests in all five areas and assuming additional responsibilities, about a month after N.M.'s hire.

46. On or about August 18, 2016, Lahey documented Kelly with a grade increase to L3 as Senior Medical Technician, and by March 21, 2017 documented that it had given her the promotion raise of 6.88%, based on her power previous salary, from $29.07 to $31.07, which was backdated to May 28, 2016.

47. Kelly in fact often oversaw training and supervised or assisted N.M on the night shift where his assignment was to perform the position she had held, becoming her successor in her lower former position.

48. Lahey discriminated on the basis of gender as it continued to pay N.M. 14 % more than Kelly who was being paid $35.50, despite her new higher position, Senior Medical Technician.

49. At $28.50/hour, with Lahey's budgeted full -time employee hours at 40 hours per week, at 2,080 hours per year, Kelly's annual base rate of pay for her first 19 months was

equivalent of $59,280/year  regular pay without overtime, compared to an expected $73,840 at her male successor N.M.'s rate of $35.50.

50. At $29.07/ hour, with Lahey's budgeted full -time employee hours at 40 hours per week, at 2080 hours per year, Kelly's base rate of pay was equivalent of $60,465 regular pay without overtime, compared to the expected $73,840 at her successor N.M.'s rate of $35.50.

51. At $31.07 (backdated to May 28, 2016), with Lahey's budgeted full -time employee hours at 40 hours per week with 2080 regular hours ,Kelly's projected pay was $64,625 without overtime; at Moore's rate of pay Kelly would have earned $73,840, increased by a  promotion rate of 6.88% to $78,920, without overtime.

52. A $7/hour difference from Kelly's a starting pay of $28.50 difference was a red flag which should have alerted Human Resources to pay inequity and at least require that it be monitored, and evaluated based on actual skill, effort and responsibility.

53. N.M. proved unqualified to learn all aspects of his position and was unable to safely meet the demands of the patients, doctors and other requirements and when these deficiencies were called to his attention, he left after about one year.

54. In 2017, N.M.'s performance problems were documented, then that documentation was suppressed, and he was allowed to leave with a clean record after Kelly complained about safety related issues in his testing, abilities and judgment.

55. The higher pay to the male was based on gender where his stated qualifications were insufficient, insufficiently checked and known to be deficient on the demanding night shift.

11

56. The performance problems of the higher paid male were a red flag especially where Kelly, who was a "role model" was being held to a different standard for pay and performance evaluation, because of her gender.

57. Upon information and belief, in this biased environment, harder work, higher evaluation levels and higher education helped males get higher pay and more opportunities. but did not so assist females.

58. Kelly discovered Lahey gave a pay boost--internship credit --to a male but not to her. During the entirety of her tenure as Medical Technologist in the Lab Stat department at Burlington location, at Lahey, Kelly was paid less per year than it paid to the male in a similarly situated role requiring similar skills, with the same basic qualifications with substantially similar job requirements and job responsibilities.

59. In September, 2014, as Hiring manager for Lahey, Donna Richards had allowed a new college graduate -a male--hired into the same Medical Technologist position, to negotiate for additional compensation for experience on an internship during his BS training, a credit Kelly had requested but been denied by the same Donna Richards, who told her the pay was non-negotiable.

60. The prior internship credit denied to Kelly was also denied to least three women hired as new graduates, each having up to four prior internships, for an expected annual loss of pay because of gender of at least $1,040 per year for the women compared to comparable males.

61. The three new graduate women's work was substantially similar skill, effort and responsibility in similar working conditions to the work of the male "A.P" who was given the internship differential.

12

**Base Pay Structure**

62. From the time of her hire, until her complaint of discriminatory pay, the base rate of pay for Medical Technologists included a $2.50/hour night shift pay increase.

63. From the time of Kelly's hire to the present, Lahey also paid all-night shift employees a $6.25 night shift differential which was not included in base pay.

64. Lahey paid employees in Medical Technology positions additional compensation in the form of benefits determined or affected by the employee's base pay, including but not limited to benefits, earned (sick or comp time), short term disability and life insurance benefits. Upon information and belief, overtime was paid on each component of pay, base pay and night shift differential.

65. Upon information and belief the salary plan was bent, twisted, or broken to favor males and to disfavor women, including but not limited to where Lahey evaluated its high performing female role model at the bottom of the salary plan, while paying the less qualified, less educated and insufficient male at a considerably higher percentage of the pay ranges allowed in that plan. Based on Lahey salary plan A100, as of 1/1/2016, Lahey paid Kelly at the bottom tenth of the minimum for her L2 lab position at time of hire at 1.07% of minimum, while paying Moore in the third decile, at his hire, in April 2016, at 1.31% of minimum.

**The Employee Census Reveals Broader Discrimination**

66. In August, 2016, during the ordinary course and proper use of the company's intranet, looking into her position as a Senior Medical Technologist, Kelly discovered the entire employee census which included every employee's salary of Lahey which had been posted to its internal website, and discovered that the N.M., the most recent hire into the position she had held as Medical Technologist, was paid $35.50, far more than the

$31.07 paid to her. His base pay before the night shift differential was $33.00 and her hourly rate was $28.57 before the night shift differential.

67. Kelly discovered that Lahey paid the male, Moore at $33.00/hour, more than the hourly rate before any shift differential paid to at least four other women, employed at the higher rank of Senior Medical Technician, also hired in 2014 with Bachelor's Degrees which were the equivalent minimum qualification to his Associates Degree and ten years' experience, without the night shift differential: (using initials)

| Employee | Hourly rate |
|----------|-------------|
| SA 2     | $29.40      |
| MK       | $28.40      |
| GN       | $29.09      |
| KY       | $30.39      |

68. Lahey paid Moore more than another female Medical Tech hired in 2014, (using initials),

| AR | $27.05 |
|----|--------|

69. Upon information and belief, Lahey gave preference to N.M., a Med Tech with an associate's degree, paying him slightly more than paid to a female <u>Senior</u> Technologist with more than ten years Lahey experience and seniority.

70. Ms. Donna Richards left Lahey on May 31, 2016. Thereafter, Linda Capone became the Director of the Department and in November 2016, and Ms. Kelly began to report to Lauren Colbert, a Manager in the Department.

**Protected Conduct**

71. Kelly complained to Lahey orally and in writing about their gender-based pay disparities. On August 25, 2016, Ms. Kelly and a co-worker approached Ms. Capone

14

claiming that they believed they were paid unfairly based on confidential salary

information they had obtained from Lahey's internal website.

72. On or about August 30, 2016, Pat De Vivo, a Human Resources Business Partner and

Ms. Capone met with Ms. Kelly to give a reply to her pay concerns. Mr. De Vivo told

Ms. Kelly that he had reviewed her pay history with the compensation team in Human

Resources and they believed that Ms. Kelly's pay was equitable based on her combined

years of experience of just 2 years at Lahey, and relied upon Mr. Moore's years of

experience before Lahey.

73. The Lahey investigation was neither thorough nor detailed. It did not compare

percentage of time spent in Chemistry, N.M.'s only area of expertise, with all other

demands, nor any other measure of overall education and training of Kelly which

outweighed N.M.'s.

74. Kelly raised the issues again internally with the Lahey Hotline.

75. On December 5, 2016, the Director of Human Resources, Kate Hennigar, offered to

meet with Ms. Kelly to discuss her concerns.

76. On February 7, 2017 Ms. Hennigar and Ms. Capone met with Ms. Kelly to review her

concerns.

77. Lahey failed to audit, monitor and remedy pay inequity which it knew or should have

known and to date, Lahey has taken no steps towards remedying the identified gender-

based pay disparities.

**Retaliatory Lowering of Base Pay and Economic Damages**

78. On about March 22, 2017, within 8 weeks after reporting the results of their

investigation into Ms. Kelly's pay complaints, and upon information and belief as a

direct result of Ms. Kelly's complaint, and continuing to the present, Lahey lowered the

base pay of all medical technologists and Senior Medical Technologists by conduct including but not limited to excluding the $2.50 which was built into the night shift, and thereafter basing merit increases, promotion pay, earned pay, short term disability and other benefits on the lower base pay, and on information and belief, took this and other steps to lower the pay of those holding those positions

79. Comparing higher pay for males in successor positions, or that of former male employees is evidence of gender disparity.

80.  Each and every paycheck for base pay going back three years was less than the rate paid to Plaintiffs' similarly situated male counterparts and/or the successor in her position, N.M., even after that employee left the employment of Lahey.

81. But for her gender, Kelly would have been paid at a rate equal to her promotional raises as applied to the pay of the male, N.M., who was performing comparable work or lesser work.

82. Lahey discriminated on the basis of gender by making promotional and merit increases based on internal previous pay, without regard to gender disparities based on hiring, external previous pay or starting salaries.

83. Lower starting pay and lower history of salary for women is not a "factor other than sex" but is recognized as a symptom of the systemic discrimination against women which MEPA and its federal cognate statutes was intended to eliminate.

84. Before her complaint, Kelly was praised for her tact, diplomacy, working without supervision, teamwork, assistance to colleagues and training of others, and was selected as the safety office and was valued in the highest rank possible as a "role model."

85.   But for her complaint of unequal pay, Kelly would have enjoyed an environment free of disparagement, yet after her complaint Lahey described her as producing a negative impact

16

on morale solely because of her protected conduct in discussing pay of herself and others, her pay complaint of pay inequity, and her sincere concerns about the safety and effectiveness of the colleague N.M., where but for her complaint she would have been thanked and appreciated.

86. On information and belief, the unlawful pay practices and retaliatory failure to adequately investigate and the disparagement of Kelly has continued and continues to benefit Lahey financially, and discourage complaints of unequal pay.

## COUNT I -RETALIATION UNDER M.G.L. 149 §105 A (MEPA

87. Plaintiff reasserts Paragraphs 1-86 as though fully set forth herein.

88. At all times relevant, Plaintiff has been a covered female employee under G.L. c. 149 §105A

89. At all times relevant, Lahey has been a covered employer under G.L. c. 149 §105A.

90. Lahey had a duty under G.L. c.149 §105A not to retaliate against Kelly for seeking to enforce her rights under the statute.

91. By the aforesaid conduct, the Plaintiff opposed acts made unlawful by this section.

92. By the aforesaid conduct, the Plaintiff made or indicated an intent to make a complaint or caused to be instituted this action under this section.

93. By the aforesaid conduct Plaintiff has been about to assist in the prosecution of this action.

94. By the aforesaid conduct Plaintiff has disclosed the employee's wages or has inquired about or discussed the wages of other employees.

95. By the aforesaid conduct the Defendant has discriminated and or retaliated against the plaintiff for the said protected conduct.

96. Kelly reasonably and in good faith opposed what she reasonably believed was gender discrimination in pay.

97. After Kelly complained of pay inequity, Lahey retaliated by lowering the promotional pay increase of a male, A.P. on his promotion, from $2.00 /hour to $1.50/hour, a salary less than that paid to prior Medical Technologists promoted to Senior Medical Technologists, unlawfully lowering his reasonably expected pay in order to remedy the pay inequity with Ms. Kelly.

98. Because Kelly complained of unequal pay, in about March 22, 2017, Lahey retaliated by moving the $2.50 built into the lab night shift base salary rate, thereby lowering the earned compensation, benefits such as short term disability and life insurance, and promotional or merit increases going forward for Kelly and all similarly situated employees.

99. Because Kelly complained of unequal pay, Lahey retaliated by telling her, who had been praised as a role model, trainer, helper of others and great team player, that she was a negative force and causing morale problems, when this was a direct description of Lahey's negative view of her protected conduct.

100. Lahey discouraged Kelly and others from complaining by conduct including the above referenced conduct, and by failing to investigate remedy and deter pay inequity on the basis of gender.

101. Lahey's unlawful adverse actions have caused Kelly damages, including lost wages and benefits, for harm in reputation and loss of the freedom to work in an environment free

of discrimination for over five years, emotional distress damages, medical treatment and medication costs.

102. Lahey is liable all damages incurred, and for liquidated damages for any wages lost through retaliation, for all pay periods for the past three years and continuing to trial or remediation, and for incurred attorney's fees and costs and will seek other damages to be determined at trial.

## COUNT II- GENDER-BASED PAY DISPARITY UNDER M.G.L. 149 §105 A (MEPA)

103. Plaintiff reasserts Paragraphs 1-102 as though fully set forth herein.

104. At all times relevant, before Kelly complained, Lahey paid A.P higher hourly rate for substantially equal work, and/or other pay disparities arising from that unequal starting pay.

105. At all times relevant after the hire of N.M., Lahey knew that it had been paying and continued to pay Kelly a salary less than the rate paid to male Medical Technologist N.M. for comparable or lesser work, who was initially the male employee, who replaced her in her position, and later was a former employee who was paid more, in violation of this section.

106. Lahey paid Kelly a salary less than that paid to her if she had been a male paid the rate at which it had paid or was paying N.M..

107. Lahey's unlawful conduct has caused Kelly damages, including lost wages and benefits, and has incurred attorney's fees and costs and will seek other damages to be determined at trial.

108. Lahey has failed to conduct a thorough and detailed audit of its pay practices prior to the filing of this suit and has failed to make any reasonable steps to reduce the pay disparity

and is therefore liable for unpaid wages and an equal amount in liquidated damages for all pay periods for the past three years and continuing until the date of trial or remediation.

### COUNT IV -GENDER DISCRIMINATION UNDER G.L. c.151B

109. Plaintiffs reassert Paragraphs 1-108 as though fully set forth herein.

110. At all times relevant, Plaintiff has been a covered female employee under G.L. c. 151B § 4 (1).

111. At all times relevant, Lahey has been a covered employer under c. 151B § 4 (1) and 4(4) and 4(5).

112. Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

113. As a direct result, Plaintiff Kelly has been damaged in lost pay and benefits, suffered emotional distress, lack of the enjoyment of an environment free of discrimination, has incurred attorney's fees and costs and will seek other damages.

114. Lahey's conduct was egregious, outrageous and repeated, in light of past violations, the egregious nature of paying Moore more than Kelly even after her promotion to Senior Medical Tech, as a role model to others, where her performance was stellar and Moore

was unable to perform tests in a timely and safe manner. Lahey is liable for punitive

damages to remedy and deter such outrageous discrimination.

### COUNT V --RETALIATION UNDER G.L. c.151B

115. Plaintiffs reassert Paragraphs 1-116 as though fully set forth herein.

116. At all times relevant, Plaintiff has been a covered female employee under G.L. c. 151B §

4 (1 and 4(4) and 4(5),

117. At all times relevant, Lahey has been a covered employer under c. 151B § 4 (1) and 4(4)

and 4(5).

118. At all times the Plaintiff performed her job at or above an acceptable level.

119. Plaintiff engaged in protected conduct in opposing practices forbidden under this

chapter by

a) Reasonably copying and analyzing the pay disparity on the basis of gender contained

in confidential documents that the employee is authorized to access in the course of

employment and that may help prove a discrimination claim.

b) Discussing her pay and her opposition to pay inequity with other employees in

furtherance of a good faith discrimination claim;

c) Complaining internally about pay inequity compared to one or more less or equally

qualified males.

d) Bringing a complaint at the EEOC for pay discrimination;

e) Bringing this lawsuit for gender discrimination and retaliation.

120. Because of her protected conduct, Lahey attempted to undermine the plaintiff after she

complained about the pay inequity by critical comments, failure to promote, failure to

give equal opportunity expected under the circumstances;

121. Because of her protected conduct, Lahey intimidated, threatened or coerced the plaintiff in the exercise and enjoyment of her rights to employment free of gender discrimination and retaliation.

122. Because of her protected conduct, Lahey aided, abetted, compelled, coerced or aided and abetted its managers, HR staff and compensation personnel in the pay inequity acts and omissions forbidden by this chapter.

123. Because of her protected conduct Lahey has interfered with her enjoyment of an environment free of discrimination, has  passed Kelly over for opportunities, promotion and advancement or a role representing the hospital, which would have been expected of an employee identified as a "role model", the highest level of evaluation because of her protected conduct.

124. Because of her protected conduct, Lahey has failed to raise her salary equal to her successor in a continued effort to discourage her complaint and to interfere with her enjoyment of equal pay.

125. Because of her protected conduct, Lahey cut the base pay and depressed the pay of her colleagues as a result of her complaints, to discourage her and other women from coming forward.

126. Defendant has violated its duty to maintain an environment free of discrimination, and not to discriminate in any manner against the Plaintiff for engaging the protected conduct alleged herein reasonably and in good faith complaining of what she reasonably believed to be gender discrimination in compensation and terms and conditions of work.

127. Lahey has failed to investigate, remedy and deter its violations.

128. The above alleged conduct has caused the plaintiff harm, emotional distress, put her in fear and caused loss of enjoyment of her job, her sleep, and other loss of enjoyment of life, as well as economic damages.

129. The above alleged conduct was outrageous or reckless disregard of its obligations alleged above, and warrant punitive damages.

### COUNT VI - GENDER DISCRIMINATION UNDER TITLE VII

130. Plaintiffs reassert Paragraphs 1-129 as though fully set forth herein.

131. At all times relevant, Plaintiff has been a covered female employee under 42 U.S.C. 2000 (e) et seq.

132. At all times relevant, Lahey has been a covered employer under 42 U.S.C. 2000 (e) et seq.

133. At all times Kelly performed her position at or above an acceptable level.

134. Kelly believes in good faith that Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

135. As a direct result, Plaintiff Kelly has been damaged in lost pay and benefits, suffered emotional distress, lack of the enjoyment of an environment free of discrimination, has incurred attorneys' fees and costs and will seek other damages.

136. In light of past violations, the egregious nature of paying Moore more than Kelly even after her promotion to Senior Medical Tech, as a role model to others, where her performance was stellar and Moore was unable to perform tests in a timely and safe manner, Lahey is liable for punitive damages to remedy and deter such outrageous discrimination.

## COUNT VII
## RETALIATION UNDER TITLE VII

137. Plaintiffs reassert Paragraphs 1-136 as though fully set forth herein.

138. At all times relevant, Plaintiff has been a covered female employee under 42 U.S.C. 2000 (e) et seq.

139. At all times relevant, Lahey has been a covered employer under c. 42 U.S.C. 2000 (e) et seq.

140. Kelly in good faith, opposed what she reasonably believed, that Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

141. Lahey was aware of her complaints and purported to examine them.

142. In violation of 42 U.S.C. § 2000e-3(a), as a direct result of her protected conduct Plaintiff Kelly has been damaged in lost pay and benefits, by the lowering of base pay by elimination of the night incentive pay from the base pay from

24

which benefits and promotion rates are calculated, has suffered emotional distress, affecting her sleep, causing anxiety, loss of faith in the future of her career, exhaustion at trying to perform at an exceeds level while being attacked with false negative criticism, suffered resulting fear that any mistake will cause her to be fired, lack of the enjoyment of an environment free of discrimination, has incurred attorney's fees and costs and will seek other damages.

143. In light of past violations, the egregious nature of lowering Kelly's base pay and that of all her peers, even after her promotion to Senior Medical Tech, where her performance was known to be stellar Lahey is liable for punitive damages to remedy and deter such outrageous retaliation intended to deter and discourage her complaints and those of others similarly situated.

## <u>COUNT VIII --</u>VIOLATION OF THE EQUAL PAY ACT

144. Plaintiffs reassert Paragraphs 1-143 as though fully set forth herein.

145. Defendant is an employer covered by the Equal Pay Act, 29 U.S.C. §206(d)

146. Lahey as an employer having employees subject to the provisions of that section, for the reasons asserted above, discriminated, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

147. The reliance upon previous pay or salary history is a tainted variable which embodies pay inequity on the basis of gender.

148. As a direct and proximate result, the Plaintiff was injured, as asserted above.

149. Under the Equal Pay Act, Lahey is liable to pay unpaid wages and an equal amount in liquidated damages, attorneys fees, interest and costs as asserted above, and injunctive relief as the court may allow.

## Prayer for Relief

Plaintiffs respectfully requests a speedy trial before a jury.

WHEREFORE, Plaintiffs respectfully request that, and moves this Court to:

(A) Determine the damages sustained by Plaintiffs as the result of Defendant's discrimination on the basis of gender and in violation of MEPA, §105A(b) M.G.L. c. 151B, and the Equal Pay Act as unpaid wages and remuneration and an equal amount of liquidated damages against Defendant and in favor of Plaintiffs, together with such prejudgment interest as may be allowed by law;

(B) Determine the damages sustained by Plaintiffs as the result of Defendant's discrimination in retaliation for asserting her rights, in violation of MEPA, §105A(d) G.L. C. 151B, Title VII and the Equal Pay Act and punitive damages as may be permitted against Defendant and in favor of Plaintiffs, together with such prejudgment interest as may be allowed by law;

(C) Award Plaintiffs costs and disbursements in this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees; and,

(D) Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Plaintiff, Elizabeth Rowe
by Her Attorney,

26

_____
Elizabeth A. Rodgers, P.C. BBO #424360
Benjamin Flam, Esq. BBO #671853
Philip Gordon BBO # Gordon Law Group LLP
585 Boylston Street
Boston MA 02116
Tel: 617-536-1800
Fax: 617-536-1802
Home Office: 857-928-4033
erodgers@gordonllp.com
pgordon@gordonllp.com
bflam@gordonllp.com

## CERTIFICATE OF SERVICE

I,  Elizabeth A. Rodgers counsel for the Plaintiff, hereby certify that on _November 15, 2019 a true copy of the above First Amended Complaint was served by First-Class Mail, postage prepaid, upon all counsel of record and by electronic filing.

_____
Elizabeth A. Rodgers

27

Exhibit A

| Policy Approved by: Vice President of Human Resources, Signature on file Date: 11/28/2016 Date of Approval/Revision: 11/1/99, 2005, 6/14/2007, 2008, 2012, 2015, 2016 | Policy Number E-5 |
| --- | --- |

## Equal Employment Opportunity

|  | Daily Worklife | Time Away | Compensation (Pay & Benefits) | Work/Life Balance |
| --- | --- | --- | --- | --- |

*Overview*: Lahey Hospital & Medical Center (LHMC) is committed to a workplace that is free from prohibited unlawful discrimination. Human Resources policies and practices reflect this commitment.

*This policy applies to*: All colleagues

> *Manager Responsibility*: Understand and actively demonstrate compliance with this policy.  Communicate to colleagues.

> *Colleague Responsibility*: Understand and comply with policy.

**Purpose**

To help ensure that LHMC's Human Resources policies and practices are administered without regard for race, color, religion, sex, age, national origin, disability, genetic information, sexual orientation, gender identity ancestry, or protected veteran status, and any other legally protected characteristics under Federal, state or local laws.

**Definitions**

| Equal Employment Opportunity | All Human Resources policies and practices will be administered without regard for race, color, religion, sex, age, national origin, disability, genetic information, sexual orientation, gender identity, ancestry, or protected veteran status and any other legally protected characteristics under Federal, state or local laws. |
| --- | --- |

1

**Policy**

- All colleagues and job candidates are guaranteed equality of employment opportunity (EEO). This means that LHMC will not discriminate against any colleague or candidate on the basis of race, color, religion, sex, age, national origin, disability, genetic information, sexual orientation, gender identity, ancestry, or protected veteran status and any other legally protected characteristics under Federal, state or local laws. Furthermore, LHMC will provide equal employment opportunity to individuals with disabilities and protected veterans in all phases of the employment process and in compliance with applicable federal, state and local laws and regulations.

- All recruitment, selection, placement and training decisions made by management will made on a non-discriminatory basis and will be based solely on an individual's job-related qualifications and abilities with respect to essential job functions.

- All colleagues who apply for a promotion or transfer will be given equal consideration. Assuming that an opening exists, the qualifications of a colleague for a promotion or transfer will be assessed on the basis of the individual's knowledge, skills and ability with respect to essential job functions. In addition, the promotion or transfer decision will be considered in light of the colleague's past disciplinary issues, if any.

- All other Human Resources policies and practices of LHMC, including but not limited to, compensation, benefits, corrective action, and safety and health programs, as well as social and recreational activities, will be administered and conducted without regard to a colleague's race, color, religion, sex, age, national origin, physical and mental disability or handicap, genetic information, sexual orientation, gender identity, ancestry, pregnancy, childbirth or related medical condition, or veteran status, as required by law.

- LHMC will take all necessary steps to ensure that each colleague's work environment is free of unlawful discrimination. This includes ensuring that the workplace is free of prohibited behavior deemed by LHMC to be harassment based on a colleague's race, color, religion, sex, age, national origin, physical and mental disability or handicap, genetic information, sexual orientation, gender identity, ancestry, pregnancy, childbirth or related medical condition, or veteran status.

- LHMC will consider making reasonable accommodations for any colleague determined to possess a qualified physical or mental disability or handicap in order to enable them to perform the essential functions of the job.

- LHMC will continually review its Human Resources policies and practices to ensure that all managers and supervisors adhere to its commitment to EEO principles.

2

# EXHIBIT B

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1981CV02534

Jeannine N. Kelly_____, PLAINTIFF(S),

v.

Lahey Hospital & Medical Center, DEFENDANT(S)



### SUMMONS

THIS SUMMONS IS DIRECTED TO Lahey Hospital & Medical Center (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex Superior_____ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and mail a** copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Superior Court, 200 Trade Center Woburn, MA 01801 (address), by mail or in person, **AND**

    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Elizabeth Rodgers, P.C., Gordon Law Group LLP, 585 Boylston Street, Boston MA 02116

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

# EXHIBIT C

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>**1981CV02534** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>Kelly, Jeannine N. vs. Lahey Hospital & Medical Center | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| TO: Elizabeth A Rodgers, Esq.<br>Gordon Law Group LLP<br>585 Boylston St<br>Boston, MA 02116 | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION** **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/26/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 12/26/2019 | |
| All motions under MRCP 12, 19, and 20 | 12/26/2019 | 01/27/2020 | 02/24/2020 |
| All motions under MRCP 15 | 12/26/2019 | 01/27/2020 | 02/24/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/23/2020 | | |
| All motions under MRCP 56 | 07/23/2020 | 08/24/2020 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/21/2020 |
| Case shall be resolved and judgment shall issue by | | | 08/27/2021 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**10/04/2019** | ASSISTANT CLERK<br>**Martha Fulham** | PHONE<br>**(781)939-2760** |
|---|---|---|

Date/Time Printed: 10-04-2019 15:08:08

SCV026\ 08/2018

# EXHIBIT D

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    SUPERIOR COURT
                                                 Civ. Act. No. 1981CV02353

JEANNINE KELLY,
        Plaintiff

        v.

LAHEY HOSPITAL AND MEDICAL
CENTER,   Defendant

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### Introduction

1.  Lahey Hospital and Medical Center (hereinafter "Lahey" or (LHMC") has committed to its duty to pay individuals performing comparable or substantially equal work equal pay, and not to discriminate on the basis of gender in any way. Lahey guaranteed that all employment decisions would be in accord with this policy and that it would monitor compliance with it.

2.  Plaintiff Jeanine Kelly (hereinafter "Kelly"), a female, brings this action to recover unpaid wages based on Lahey paying a male Medical Technologist a starting pay at a rate 22% more than the rate it paid to her, and to recover the subsequent compensation she would have received if she had been hired at a rate equal to the rate paid to the male Medical Technician, (hereinafter referred to as "N.M."). Starting salaries significantly affected all subsequent compensation at Lahey. Once they elevated the pay of the new male, Lahey did not increase the pay of the females performing comparable work.

3.  Lahey also paid numerous other women less than the highly paid male with minimum qualifications; Lahey was overtly or implicitly biased against women hired with at least

1

similar qualifications who have also been damaged in every subsequent paycheck, and in every subsequent raise and benefit calculation based on their discriminatory previous salary.

4.  Kelly discussed the wages of herself and others with colleagues, complained of this inequity regarding herself and others by complaining internally, and to the EEOC, while continuing to receive outstanding reviews for her work, patience and kindness. Because of her opposition to unlawful conduct Lahey improperly engaged in retaliatory action toward her and the class of Medical Technologists and Senior Medical Technologists for whom she was advocating.

5.  Shortly after reviewing Ms. Kelly's complaint, Lahey lowered the base pay of all Medical Technologists, and Senior Medical Technologists, to exclude a shift differential from the definition of base pay; this manipulation of the base pay lowered the rate at which other compensation, including promotion and merit pay and some benefit rates, are calculated. This manipulation sent a message to Ms. Kelly and to the class of all female Medical Technicians and Senior Medical technicians paid less than the newly hired male that those who make pay complaints do so at their peril …that Lahey is prepared to damage third parties because of protected conduct.

6.  N.M., the higher paid male who succeeded Kelly into the entry level position of Medical Technologist shortly before she was promoted in 2016 to Senior Medical Technologist, had insufficient education and training, and proved unqualified to learn all aspects of his position. He was unable to safely meet the demands of the patients, doctors and other requirements. When these deficiencies were called to his attention, he left after about one year, while before the end of one-year Lahey had found Kelly to

exceed expectations and had identified her as a "role model" exemplary employee. This disparity shows that Kelly was at least as qualified as N.M., who was paid substantially more, and indicates that gender discrimination was operating.

7.  Kelly brings this case on behalf of herself and all other similarly situated women who have been forced to do comparable work for Lahey without equal pay, who have been damaged by gender discrimination in compensation and terms and conditions of work, as well as by conduct failing to investigate and remedy pay disparity. She also asserts claims for retaliatory conduct to discourage complaints of pay inequity and disparage Ms. Kelly which caused her severe emotional distress, and caused her damage in her enjoyment of life, and warrants all the relief available under both G.L. c. 105A and c. 151B, Title VII and the Equal Pay Act.

## Parties

8.  Plaintiff Jeannine Kelly ("Kelly") is a resident of 13 Dogwood Cir., Pelham, NH 03076,

9.  Defendant Lahey Hospital and Medical Center ("Lahey" or "LHMC" is a nonprofit corporation headquartered in 41 Mall Road, Burlington, Massachusetts in the county of Middlesex.

## Factual Allegations

10. Defendant Lahey is and has been at all times relevant an employer of Kelly, and is an employer subject to the Massachusetts Equal Pay Act, M.G.L. c.149 §105A (hereinafter "MEPA"), M.G.L. c. 151B, and Executive Order 11246, Title VII of the Civil Rights Act of 1964, and the Equal Pay Act 29 U.S.C. §206(d).

## Policies and Practices

11. For all times relevant Lahey acknowledges its knowledge and awareness of a duty, and a commitment to maintain a compensation system free of bias based upon gender or protected status.

12. A Massachusetts employer must have written protocols and written practices to prevent, investigate and remedy gender bias and to ensure equal employment opportunity for males and females in hiring, in compensation, and to avoid conduct which would deter a reasonable person from making a complaint of discrimination in good faith.

13. Lahey has such a policy, See, Lahey's Equal Employment Opportunity Policy Attached as Exhibit A. ("EEO" policy), which guarantees all colleagues and job candidates equality of employment opportunity.

14. Lahey's EEO policy is intended to ensure that all employment decisions are in accordance with the LHMC EEO policy, that Human Resources will monitor compliance with EEO policy, that LHMC will take all necessary steps to ensure each colleague's work environment is free of discrimination, and that all compensation decisions will be made without regard to gender, solely based on an individual's job related qualifications and ability with respect to essential job functions.

15. The Lahey EEO policy states that colleagues will not be subjected to discrimination or unlawful retaliation because they have raised an allegation of discrimination. Lahey has a duty not to discourage complaints of discrimination, and to investigate remedy and deter discrimination.

The duty to treat women equally in pay and terms and conditions of work is of vital importance and vindicates an important public policy of Massachusetts and the U.S., supplying women with fundamental quality and fairness to advance in their careers

4

equally to men, revenue to support their families, to generate demand in the economy and to provide for sickness and health and retirement equally to men.

16. For all times relevant, Lahey was aware that Massachusetts has required equal pay for comparable work under MEPA since 1945, and continues to require comparable work for substantially equal positions, with comparable skill effort and responsibility, under MEPA as most recently amended in July 1, 2016, which also bars any discrimination on the basis of gender in any way.

17. Lahey's Human Resources policies and practices must be practiced and administered to implement this duty under MEPA.

18. To ensure equal or comparable pay for equal or comparable work, an employer must review work actually performed, and not rely upon pay grades or titles alone.

19. Failure to conduct a thorough and detailed self-evaluation of pay practices prior to the filing of this suit and to have made progress to remediate inequities found, makes gender bias more likely and makes Lahey liable for liquidated damages for gender inequity.

20. An employer may use education and experience relevant to the performance of the job, but must do so in an equal manner regardless of gender.

21. Documented review of comparators' references and experience, reduces gender bias.

22. At all relevant times the Lahey starting base pay rate at which Medical Technologists were hired would determine future merit and promotional increases.

23. Up through at least 2017, Lahey determined the rate for employees promoted into new positions based on an increase over the employee's then current base pay rate. (MCAD response p.2).

24. At all times relevant, Lahey used defined salary grades for Medical Technicians, also identified as acute lab technicians. Since 2016, Lahey has labeled progressive levels of job grades for such Medical Technician as "L2" (formerly classified as 11L), and Senior Medical Technician as "L3", with minimum, midpoint and maximum pay schedules for each "Acute Lab" positions on "Salary plan A100". These pay grades and salary plan were used to determine and guide pay and promotion decisions.

25. Lahey has had a history of practices which discriminated on the basis of gender in compensation. The Office of Federal Contract Compliance Programs ("OFCCP") investigators determined that, from 2010 to 2012, the Lahey Clinic failed to pay certain female housekeepers — predominantly Haitian, Creole-speaking African Americans — at the same rate as their male counterparts. In its agreement with OFCCP, the Lahey Clinic agreed to pay the affected women $190,000 in lost wages, interest and salary adjustments.

26. Lahey has had a practice of discrimination in hiring, which put them on notice of how implicit and conscious bias can cause discrimination in hiring. In 2009, Lahey paid $136,000 to settle OFCCP allegations of hiring discrimination affecting 18 minorities — mostly Hispanic and Asian Americans — who applied and were rejected for secretarial positions.

**Unequal pay of Kelly with male comparators**

27. In May 2016 Lahey haired a male, ("N.M.") to perform the same job that Kelly was performing. Lahey required of both substantially similar skill, effort and responsibility under similar working conditions.

28. They both had substantially similar job titles and job descriptions as Medical Technicians at Lahey Hospital & Medical Center ("Lahey" or "LHMC") By offer of

6

April 15, 2016, effective by both held "job code 317901" which was level L2, formerly
"11L".

29. Both Kelly and N.M worked in LHMC's flagship Burlington Hospital location, "Burl-
4". Other smaller locations, within Lahey, such as Peabody Hospital. performed less
complex tests while the more complex tests were sent to Burlington.

30. Both Kelly and N.M. worked on the night shift in the same Lahey lab providing
heterogeneous lab services such as Microbiology, Chemistry, Hematology, Blood bank,
and Urinalysis, testing, often with far less supervision than the day shift. On the day
shift, Medical Technologists often worked in separate departments doing only
specialized tests involving only one such arena, and had more supervision.

31. The night shift performs tests under additional stress including surgery being underway
with multiple types of tests required under high priority time constraints.

32. At the time of the hire of N.M, Kelly was in job code 317901, grade L2, Medical
Technologist, and had more experience, more certification, a higher degree and more
seniority than he. Kelly had proven and documented  excellent skill, effort ,and
responsibility, in her annual evaluations after almost two years at Lahey working with
minimal supervision at an exemplary level;   before starting, she had a Bachelor's
Degree in Medical Technology with internship training as part of her education in five
areas of testing, Hematology, Coagulation, Chemistry, Microbiology, Blood Bank,
Urinalysis, Arterial Blood Gas analyzing, and Specimen Processing  (one at Lahey) and
she had passed exams to be certified in all those areas as a A.S.C. P. "Senior Medical
Scientist", and ten years of experience in a fast paced professional role as an excellent
and licensed real estate broker before obtaining that degree.  Lahey considered her to

7

have met the minimum qualifications for Medical Technician at Lahey, with the ability to learn the additional skills and testing required by the position.

33. At N.M.'s hire, also into job code 317901, grade L2, N.M. submitted ASCP board of certification as a "Medical Lab Technician", a lower certification than Kelly's "Senior Medical Scientist" credential, which did not permit him to perform specific tests which required a bachelor's degree. He also had an associate's degree and ten years' experience only in hospital-based Chemistry testing, and no Lahey seniority or Lahey internships. Without assessing his ability training or experience in Hematology, Coagulation, Chemistry, Microbiology, Blood Bank, Urinalysis, Arterial Blood Gas analyzing, and Specimen Processing, Lahey considered him to meet the minimum qualifications for Medical Technician at Lahey, with the ability to learn the additional skills and testing required by the position.

34. Kelly had greater documented ability to handle stress which is recognized as greater effort; she had greater discretion, accountability and duties themselves, including training N.M, which establishes greater responsibility.

35. Because of her seniority, her skill effort and responsibility combined, including further training and increased responsibilities, about the same time as N.M. was hired, between March 28, 2016 and effective May 28, 2016, Manager Donna Richards of Lahey decided to promote Kelly to Senior Medical Technologist,

36. To become a Senior Medical Technologist, the candidate was nominally required to have a bachelor's degree in Medical Technology, and two years at Lahey, or an associate's degree and 20 years of working at Lahey.

37. Kelly was promoted effective May 28, 2016 to Senior Medical Technologist with her bachelor's degree and before her second-year anniversary at Lahey.

38. As of May 28, 2016, when Kelly became qualified for and promoted into Sr. Medical Technologist and Moore was not qualified for that position, as N.M. had only an associate's degree with 10 years' experience in total and no years at Lahey.

39. N.M.'s ten prior years of experience in Chemistry alone outside of Lahey were not relevant to Ms. Kelly's pay in her initial or her higher position as he performed work of a lower skill, effort and responsibility often under her direction, guidance and instruction, and for a great deal of the work required on the night shift he did not have any prior experience.

40. N.M.'s additional years of experience performing Chemistry tests alone with an associate degree is not relevant or reasonably related to the job of Medical Technician and does not warrant a pay disparity of 22%.

41. N.M.'s additional years of experience performing Chemistry tests alone with an associate degree is also not relevant or reasonably related to the higher job of Senior Medical Technician job in question to permit a pay disparity of 14%.

42. Lahey, by the same decision-maker Manager Donna Richards, determined Kelly would receive a promotional increase rate of 6.87% based on her prior pay, (which was only $2/more per hour) for a rate of $31.07. This was significantly less than Richards authorized Lahey to pay to N.M., the male newly hired in April 2016 at $35.50 whom she hired into the lower, Medical Technologist position.

43. Kelly's superior qualifications in other areas more than outweighed N.M.'s additional
    years of experience in Chemistry alone, and she was at least as qualified as N.M. and
    A.P.

44. Beginning in May 2, 2016, when Lahey hired and paid Moore a starting pay at a rate of
    $35.50, his rate was 24.6% more than Kelly's earlier starting rate of $28.50 on
    September 8, 2014 into the same position, with the same job description, then called
    Medical Technologist grade 11L.

45. Lahey recorded Kelly having a 2% raise by June 2016, paying Kelly a rate of $29.07,
    after her almost two years seniority at Lahey, excellent reviews and performing tests in
    all five areas and assuming additional responsibilities, about a month after N.M.'s hire.

46. On or about August 18, 2016, Lahey documented Kelly with a grade increase to L3 as
    Senior Medical Technician, and by March 21, 2017 documented that it had given her
    the promotion raise of 6.88%, based on her power previous salary, from $29.07 to
    $31.07, which was backdated to May 28, 2016.

47. Kelly in fact often oversaw training and supervised or assisted N.M on the night shift
    where his assignment was to perform the position she had held, becoming her successor
    in her lower former position.

48. Lahey discriminated on the basis of gender as it continued to pay N.M. 14 % more than
    Kelly who was being paid $35.50, despite her new higher position, Senior Medical
    Technician.

49. At $28.50/hour, with Lahey's budgeted full -time employee hours at 40 hours per week,
    at 2,080 hours per year, Kelly's annual base rate of pay for her first 19 months was

equivalent of $59,280/year regular pay without overtime, compared to an expected $73,840 at her male successor N.M.'s rate of $35.50.

50. At $29.07/ hour, with Lahey's budgeted full -time employee hours at 40 hours per week, at 2080 hours per year, Kelly's base rate of pay was equivalent of $60,465 regular pay without overtime, compared to the expected $73,840 at her successor N.M.'s rate of $35.50.

51. At $31.07 (backdated to May 28, 2016), with Lahey's budgeted full -time employee hours at 40 hours per week with 2080 regular hours ,Kelly's projected pay was $64,625 without overtime; at Moore's rate of pay Kelly would have earned $73,840, increased by a promotion rate of 6.88% to $78,920, without overtime.

52. A $7/hour difference from Kelly's a starting pay of $28.50 difference was a red flag which should have alerted Human Resources to pay inequity and at least require that it be monitored, and evaluated based on actual skill, effort and responsibility.

53. N.M. proved unqualified to learn all aspects of his position and was unable to safely meet the demands of the patients, doctors and other requirements and when these deficiencies were called to his attention, he left after about one year.

54. In 2017, N.M.'s performance problems were documented, then that documentation was suppressed, and he was allowed to leave with a clean record after Kelly complained about safety related issues in his testing, abilities and judgment.

55. The higher pay to the male was based on gender where his stated qualifications were insufficient, insufficiently checked and known to be deficient on the demanding night shift.

56. The performance problems of the higher paid male were a red flag especially where Kelly, who was a "role model" was being held to a different standard for pay and performance evaluation, because of her gender.

57. Upon information and belief, in this biased environment, harder work, higher evaluation levels and higher education helped males get higher pay and more opportunities. but did not so assist females.

58. Kelly discovered Lahey gave a pay boost--internship credit --to a male but not to her. During the entirety of her tenure as Medical Technologist in the Lab Stat department at Burlington location, at Lahey, Kelly was paid less per year than it paid to the male in a similarly situated role requiring similar skills, with the same basic qualifications with substantially similar job requirements and job responsibilities.

59. In September, 2014, as Hiring manager for Lahey, Donna Richards had allowed a new college graduate -a male--hired into the same Medical Technologist position, to negotiate for additional compensation for experience on an internship during his BS training, a credit Kelly had requested but been denied by the same Donna Richards, who told her the pay was non-negotiable.

60. The prior internship credit denied to Kelly was also denied to least three women hired as new graduates, each having up to four prior internships, for an expected annual loss of pay because of gender of at least $1,040 per year for the women compared to comparable males.

61. The three new graduate women's work was substantially similar skill, effort and responsibility in similar working conditions to the work of the male "A.P" who was given the internship differential.

**Base Pay Structure**

62. From the time of her hire, until her complaint of discriminatory pay, the base rate of pay
for Medical Technologists included a $2.50/hour night shift pay increase.

63. From the time of Kelly's hire to the present, Lahey also paid all-night shift employees a
$6.25 night shift differential which was not included in base pay.

64. Lahey paid employees in Medical Technology positions additional compensation in the
form of benefits determined or affected by the employee's base pay, including but not
limited to benefits, earned (sick or comp time), short term disability and life insurance
benefits. Upon information and belief, overtime was paid on each component of pay,
base pay and night shift differential.

65. Upon information and belief the salary plan was bent, twisted, or broken to favor males
and to disfavor women, including but not limited to where Lahey evaluated its high
performing female role model at the bottom of the salary plan, while paying the less
qualified, less educated and insufficient male at a considerably higher percentage of the
pay ranges allowed in that plan. Based on Lahey salary plan A100, as of 1/1/2016,
Lahey paid Kelly at the bottom tenth of the minimum for her L2 lab position at time of
hire at 1.07% of minimum, while paying Moore in the third decile, at his hire, in April
2016, at 1.31% of minimum.

**The Employee Census Reveals Broader Discrimination**

66. In August, 2016, during the ordinary course and proper use of the company's intranet,
looking into her position as a Senior Medical Technologist, Kelly discovered the entire
employee census which included every employee's salary of Lahey which had been
posted to its internal website, and discovered that the N.M., the most recent hire into the
position she had held as Medical Technologist, was paid $35.50, far more than the

$31.07 paid to her. His base pay before the night shift differential was $33.00 and her hourly rate was $28.57 before the night shift differential.

67. Kelly discovered that Lahey paid the male, Moore at $33.00/hour, more than the hourly rate before any shift differential paid to at least four other women, employed at the higher rank of Senior Medical Technician, also hired in 2014 with Bachelor's Degrees which were the equivalent minimum qualification to his Associates Degree and ten years' experience, without the night shift differential: (using initials)

| Employee | Hourly rate |
|----------|-------------|
| SA 2 | $29.40 |
| MK | $28.40 |
| GN | $29.09 |
| KY | $30.39 |

68. Lahey paid Moore more than another female Medical Tech hired in 2014, (using initials),

    AR   $27.05

69. Upon information and belief, Lahey gave preference to N.M., a Med Tech with an associate's degree, paying him slightly more than paid to a female <u>Senior</u> Technologist with more than ten years Lahey experience and seniority.

70. Ms. Donna Richards left Lahey on May 31, 2016. Thereafter, Linda Capone became the Director of the Department and in November 2016, and Ms. Kelly began to report to Lauren Colbert, a Manager in the Department.

**Protected Conduct**

71. Kelly complained to Lahey orally and in writing about their gender-based pay disparities. On August 25, 2016, Ms. Kelly and a co-worker approached Ms. Capone

14

claiming that they believed they were paid unfairly based on confidential salary information they had obtained from Lahey's internal website.

72. On or about August 30, 2016, Pat De Vivo, a Human Resources Business Partner and Ms. Capone met with Ms. Kelly to give a reply to her pay concerns. Mr. De Vivo told Ms. Kelly that he had reviewed her pay history with the compensation team in Human Resources and they believed that Ms. Kelly's pay was equitable based on her combined years of experience of just 2 years at Lahey, and relied upon Mr. Moore's years of experience before Lahey.

73. The Lahey investigation was neither thorough nor detailed. It did not compare percentage of time spent in Chemistry, N.M.'s only area of expertise, with all other demands, nor any other measure of overall education and training of Kelly which outweighed N.M.'s.

74. Kelly raised the issues again internally with the Lahey Hotline.

75. On December 5, 2016, the Director of Human Resources, Kate Hennigar, offered to meet with Ms. Kelly to discuss her concerns.

76. On February 7, 2017 Ms. Hennigar and Ms. Capone met with Ms. Kelly to review her concerns.

77. Lahey failed to audit, monitor and remedy pay inequity which it knew or should have known and to date, Lahey has taken no steps towards remedying the identified gender-based pay disparities.

### Retaliatory Lowering of Base Pay and Economic Damages

78. On about March 22, 2017, within 8 weeks after reporting the results of their investigation into Ms. Kelly's pay complaints, and upon information and belief as a direct result of Ms. Kelly's complaint, and continuing to the present, Lahey lowered the

base pay of all medical technologists and Senior Medical Technologists by conduct including but not limited to excluding the $2.50 which was built into the night shift, and thereafter basing merit increases, promotion pay, earned pay, short term disability and other benefits on the lower base pay, and on information and belief, took this and other steps to lower the pay of those holding those positions

79. Comparing higher pay for males in successor positions, or that of former male employees is evidence of gender disparity.

80. Each and every paycheck for base pay going back three years was less than the rate paid to Plaintiffs' similarly situated male counterparts and/or the successor in her position, N.M., even after that employee left the employment of Lahey.

81. But for her gender, Kelly would have been paid at a rate equal to her promotional raises as applied to the pay of the male, N.M, who was performing comparable work or lesser work.

82. Lahey discriminated on the basis of gender by making promotional and merit increases based on internal previous pay, without regard to gender disparities based on hiring, external previous pay or starting salaries.

83. Lower starting pay and lower history of salary for women is not a "factor other than sex" but is recognized as a symptom of the systemic discrimination against women which MEPA and its federal cognate statutes was intended to eliminate.

84. Before her complaint, Kelly was praised for her tact, diplomacy, working without supervision, teamwork, assistance to colleagues and training of others, and was selected as the safety office and was valued in the highest rank possible as a "role model."

85. But for her complaint of unequal pay, Kelly would have enjoyed an environment free of disparagement, yet after her complaint Lahey described her as producing a negative impact

on morale solely because of her protected conduct in discussing pay of herself and others, her pay complaint of pay inequity, and her sincere concerns about the safety and effectiveness of the colleague N.M., where but for her complaint she would have been thanked and appreciated.

86. On information and belief, the unlawful pay practices and retaliatory failure to adequately investigate and the disparagement of Kelly has continued and continues to benefit Lahey financially, and discourage complaints of unequal pay.

**COUNT I -RETALIATION UNDER M.G.L. 149 §105 A (MEPA**

87. Plaintiff reasserts Paragraphs 1-86 as though fully set forth herein.

88. At all times relevant, Plaintiff has been a covered female employee under G.L. c. 149 §105A

89. At all times relevant, Lahey has been a covered employer under G.L. c. 149 §105A.

90. Lahey had a duty under G.L. c.149 §105A not to retaliate against Kelly for seeking to enforce her rights under the statute.

91. By the aforesaid conduct, the Plaintiff opposed acts made unlawful by this section.

92. By the aforesaid conduct, the Plaintiff made or indicated an intent to make a complaint or caused to be instituted this action under this section.

93. By the aforesaid conduct Plaintiff has been about to assist in the prosecution of this action.

94. By the aforesaid conduct Plaintiff has disclosed the employee's wages or has inquired about or discussed the wages of other employees.

95. By the aforesaid conduct the Defendant has discriminated and or retaliated against the plaintiff for the said protected conduct.

96. Kelly reasonably and in good faith opposed what she reasonably believed was gender discrimination in pay.

97. After Kelly complained of pay inequity, Lahey retaliated by lowering the promotional pay increase of a male, A.P. on his promotion, from $2.00 /hour to $1.50/hour, a salary less than that paid to prior Medical Technologists promoted to Senior Medical Technologists, unlawfully lowering his reasonably expected pay in order to remedy the pay inequity with Ms. Kelly.

98. Because Kelly complained of unequal pay, in about March 22, 2017, Lahey retaliated by moving the $2.50 built into the lab night shift base salary rate, thereby lowering the earned compensation, benefits such as short term disability and life insurance, and promotional or merit increases going forward for Kelly and all similarly situated employees.

99. Because Kelly complained of unequal pay, Lahey retaliated by telling her, who had been praised as a role model, trainer, helper of others and great team player, that she was a negative force and causing morale problems, when this was a direct description of Lahey's negative view of her protected conduct.

100. Lahey discouraged Kelly and others from complaining by conduct including the above referenced conduct, and by failing to investigate remedy and deter pay inequity on the basis of gender.

101. Lahey's unlawful adverse actions have caused Kelly damages, including lost wages and benefits, for harm in reputation and loss of the freedom to work in an environment free

18

of discrimination for over five years, emotional distress damages, medical treatment and medication costs.

102. Lahey is liable all damages incurred, and for liquidated damages for any wages lost through retaliation, for all pay periods for the past three years and continuing to trial or remediation, and for incurred attorney's fees and costs and will seek other damages to be determined at trial.

## COUNT II- GENDER-BASED PAY DISPARITY UNDER M.G.L. 149 §105 A (MEPA)

103. Plaintiff reasserts Paragraphs 1-102 as though fully set forth herein.

104. At all times relevant, before Kelly complained, Lahey paid A.P higher hourly rate for substantially equal work, and/or other pay disparities arising from that unequal starting pay.

105. At all times relevant after the hire of N.M., Lahey knew that it had been paying and continued to pay Kelly a salary less than the rate paid to male Medical Technologist N.M. for comparable or lesser work, who was initially the male employee, who replaced her in her position, and later was a former employee who was paid more, in violation of this section.

106. Lahey paid Kelly a salary less than that paid to her if she had been a male paid the rate at which it had paid or was paying N.M..

107. Lahey's unlawful conduct has caused Kelly damages, including lost wages and benefits, and has incurred attorney's fees and costs and will seek other damages to be determined at trial.

108. Lahey has failed to conduct a thorough and detailed audit of its pay practices prior to the filing of this suit and has failed to make any reasonable steps to reduce the pay disparity

and is therefore liable for unpaid wages and an equal amount in liquidated damages for all pay periods for the past three years and continuing until the date of trial or remediation.

## COUNT IV -GENDER DISCRIMINATION UNDER G.L. c.151B

109. Plaintiffs reassert Paragraphs 1-108 as though fully set forth herein.

110. At all times relevant, Plaintiff has been a covered female employee under G.L. c. 151B § 4 (1).

111. At all times relevant, Lahey has been a covered employer under c. 151B § 4 (1) and 4(4) and 4(5).

112. Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

113. As a direct result, Plaintiff Kelly has been damaged in lost pay and benefits, suffered emotional distress, lack of the enjoyment of an environment free of discrimination, has incurred attorney's fees and costs and will seek other damages.

114. Lahey's conduct was egregious, outrageous and repeated, in light of past violations, the egregious nature of paying Moore more than Kelly even after her promotion to Senior Medical Tech, as a role model to others, where her performance was stellar and Moore

20

was unable to perform tests in a timely and safe manner. Lahey is liable for punitive damages to remedy and deter such outrageous discrimination.

## COUNT V --RETALIATION UNDER G.L. c.151B

115. Plaintiffs reassert Paragraphs 1-116 as though fully set forth herein.

116. At all times relevant, Plaintiff has been a covered female employee under G.L. c. 151B § 4 (1 and 4(4) and 4(5),

117. At all times relevant, Lahey has been a covered employer under c. 151B § 4 (1) and 4(4) and 4(5).

118. At all times the Plaintiff performed her job at or above an acceptable level.

119. Plaintiff engaged in protected conduct in opposing practices forbidden under this chapter by

   a) Reasonably copying and analyzing the pay disparity on the basis of gender contained in confidential documents that the employee is authorized to access in the course of employment and that may help prove a discrimination claim.

   b) Discussing her pay and her opposition to pay inequity with other employees in furtherance of a good faith discrimination claim;

   c) Complaining internally about pay inequity compared to one or more less or equally qualified males.

   d) Bringing a complaint at the EEOC for pay discrimination;

   e) Bringing this lawsuit for gender discrimination and retaliation.

120. Because of her protected conduct, Lahey attempted to undermine the plaintiff after she complained about the pay inequity by critical comments, failure to promote, failure to give equal opportunity expected under the circumstances;

121. Because of her protected conduct, Lahey intimidated, threatened or coerced the plaintiff in the exercise and enjoyment of her rights to employment free of gender discrimination and retaliation.

122. Because of her protected conduct, Lahey aided, abetted, compelled, coerced or aided and abetted its managers, HR staff and compensation personnel in the pay inequity acts and omissions forbidden by this chapter.

123. Because of her protected conduct Lahey has interfered with her enjoyment of an environment free of discrimination, has passed Kelly over for opportunities, promotion and advancement or a role representing the hospital, which would have been expected of an employee identified as a "role model", the highest level of evaluation because of her protected conduct.

124. Because of her protected conduct, Lahey has failed to raise her salary equal to her successor in a continued effort to discourage her complaint and to interfere with her enjoyment of equal pay.

125. Because of her protected conduct, Lahey cut the base pay and depressed the pay of her colleagues as a result of her complaints, to discourage her and other women from coming forward.

126. Defendant has violated its duty to maintain an environment free of discrimination, and not to discriminate in any manner against the Plaintiff for engaging the protected conduct alleged herein reasonably and in good faith complaining of what she reasonably believed to be gender discrimination in compensation and terms and conditions of work.

127. Lahey has failed to investigate, remedy and deter its violations.

128. The above alleged conduct has caused the plaintiff harm, emotional distress, put her in fear and caused loss of enjoyment of her job, her sleep, and other loss of enjoyment of life, as well as economic damages.

129. The above alleged conduct was outrageous or reckless disregard of its obligations alleged above, and warrant punitive damages.

## COUNT VI - GENDER DISCRIMINATION UNDER TITLE VII

130. Plaintiffs reassert Paragraphs 1-129 as though fully set forth herein.

131. At all times relevant, Plaintiff has been a covered female employee under 42 U.S.C. 2000 (e) et seq.

132. At all times relevant, Lahey has been a covered employer under 42 U.S.C. 2000 (e) et seq.

133. At all times Kelly performed her position at or above an acceptable level.

134. Kelly believes in good faith that Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

135. As a direct result, Plaintiff Kelly has been damaged in lost pay and benefits, suffered emotional distress, lack of the enjoyment of an environment free of discrimination, has incurred attorneys' fees and costs and will seek other damages.

136. In light of past violations, the egregious nature of paying Moore more than Kelly even after her promotion to Senior Medical Tech, as a role model to others, where her performance was stellar and Moore was unable to perform tests in a timely and safe manner, Lahey is liable for punitive damages to remedy and deter such outrageous discrimination.

## COUNT VII

## RETALIATION UNDER TITLE VII

137. Plaintiffs reassert Paragraphs 1-136 as though fully set forth herein.

138. At all times relevant, Plaintiff has been a covered female employee under 42 U.S.C. 2000 (e) et seq.

139. At all times relevant, Lahey has been a covered employer under c. 42 U.S.C. 2000 (e) et seq.

140. Kelly in good faith, opposed what she reasonably believed, that Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

141. Lahey was aware of her complaints and purported to examine them.

142. In violation of 42 U.S.C. § 2000e-3(a), as a direct result of her protected conduct Plaintiff Kelly has been damaged in lost pay and benefits, by the lowering of basepay by elimination of the night incentive pay from the base pay from

which benefits and promotion rates are calculated, has suffered emotional distress, affecting her sleep, causing anxiety, loss of faith in the future of her career, exhaustion at trying to perform at an exceeds level while being attacked with false negative criticism, suffered resulting fear that any mistake will cause her to be fired, lack of the enjoyment of an environment free of discrimination, has incurred attorney's fees and costs and will seek other damages.

143. In light of past violations, the egregious nature of lowering Kelly's base pay and that of all her peers, even after her promotion to Senior Medical Tech, where her performance was known to be stellar Lahey is liable for punitive damages to remedy and deter such outrageous retaliation intended to deter and discourage her complaints and those of others similarly situated.

## COUNT VIII --VIOLATION OF THE EQUAL PAY ACT

144. Plaintiffs reassert Paragraphs 1-143 as though fully set forth herein.

145. Defendant is an employer covered by the Equal Pay Act, 29 U.S.C. §206(d)

146. Lahey as an employer having employees subject to the provisions of that section, for the reasons asserted above, discriminated, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

147. The reliance upon previous pay or salary history is a tainted variable which embodies pay inequity on the basis of gender.

148. As a direct and proximate result, the Plaintiff was injured, as asserted above.

149. Under the Equal Pay Act, Lahey is liable to pay unpaid wages and an equal amount in liquidated damages, attorneys fees, interest and costs as asserted above, and injunctive relief as the court may allow.

## Prayer for Relief

Plaintiffs respectfully requests a speedy trial before a jury.

WHEREFORE, Plaintiffs respectfully request that, and moves this Court to:

(A) Determine the damages sustained by Plaintiffs as the result of Defendant's discrimination on the basis of gender and in violation of MEPA, §105A(b) M.G.L. c. 151B,  and the Equal Pay Act as unpaid wages and remuneration and an equal amount of liquidated damages against Defendant and in favor of Plaintiffs, together with such prejudgment interest as may be allowed by law;

(B) Determine the damages sustained by Plaintiffs as the result of Defendant's discrimination in retaliation for asserting her rights, in violation of MEPA, §105A(d) G.L. C. 151B, Title VII and the Equal Pay Act and punitive damages as may be permitted against Defendant and in favor of Plaintiffs, together with such prejudgment interest as may be allowed by law;

(C) Award Plaintiffs costs and disbursements in this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees; and,

(D) Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Plaintiff, Elizabeth Rowe
by Her Attorney,

26

*Elizabeth A Rodgers* (signature)

Elizabeth A. Rodgers, P.C. BBO #424360
Benjamin Flam, Esq. BBO #671853
Philip Gordon BBO # Gordon Law Group LLP
585 Boylston Street
Boston MA 02116
Tel: 617-536-1800
Fax: 617-536-1802
Home Office: 857-928-4033
erodgers@gordonllp.com
pgordon@gordonllp.com
bflam@gordonllp.com

## CERTIFICATE OF SERVICE

I, Elizabeth A. Rodgers counsel for the Plaintiff, hereby certify that on _November 15, 2019 a true copy of the above First Amended Complaint was served by First-Class Mail, postage prepaid, upon all counsel of record and by electronic filing.

*Elizabeth A Rodgers* (signature)

Elizabeth A. Rodgers

# EXHIBIT E

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                                                  SUPERIOR COURT

JEANNINE KELLY,
            Plaintiff

            v.

LAHEY HOSPITAL AND MEDICAL
CENTER,      Defendant

**RECEIVED**

8/28/2019

Civil Action No.:

## COMPLAINT AND JURY DEMAND

### Introduction

1.      Plaintiff Jeanine Kelly brings this action to recover unpaid wages unequal to the pay of two comparable male Medical Technicians and to recover the subsequent pay increases she would have received if she had been hired at a rate equal to the male Medical Technicians compensation rate.  As of May 2, 2016, a male, Nick Moore, and Jeannine Kelly (a woman) performed jobs that require substantially equal skill, effort and responsibility as Medical Technicians at Lahey Hospital & Medical Center "Lahey" in the Burlington location, on the same night shift in the same Burlington Hospital lab.  In April 2016 Lahey had hired Moore at a rate 22% more than Kelly was paid, ($35.50 per hour, compared to the $29.07 it was paying to Kelly) which was seven dollars higher than the starting pay of $28.50 which was the Kelly's starting pay in 2014. Lahey then promoted Kelly into Senior Medical Technologist as of May 28, 2016. Despite her higher title, certifications, college degree and Lahey experience, Lahey continued to pay Kelly less than Moore, paying her only $31.07 per hour to his $35.50 as successor in her lower former position.

2.      Lahey waived the confidentiality of its pay practices by posting its entire pay census in late 2016 and lawfully and properly Kelly discovered that at least 8 women performing

work as Medical Technologist or Senior Medical Technologist, were paid less than Moore, to perform work which required substantially equal or higher skill effort and responsibility. Kelly sought to correct this inequity internally and at the EEOC to no avail.  Lahey has failed in its duty to pay individuals performing comparable or substantially equal work equal pay, and in fact lowered the base pay of all Medical Technologists, lowering the rate at which promotion and short term disability rates are calculated, sending a message that you complain at peril to yourself and all others similarly situated. Kelly brings this case on behalf of herself and all other similarly situated women who have been forced to do equal work for Lahey  without equal pay, for gender discrimination in compensation and terms and conditions of work as well as conduct failing to investigate and remedy pay disparity and conduct to discourage complaints of pay inequity.

**Parties**

3.      Plaintiff Jeannine Kelly ("Kelly") is a resident of Pelham, New Hampshire.

4.      Defendant Leahy Hospital and Medical Center ("Lahey") is a nonprofit corporation headquartered in Burlington,  Massachusetts in the county of Middlesex.

**Factual Allegations**

5.      Defendant Lahey is and has been at all times relevant an employer of Kelly, who is an employer subject to Executive Order 11246, Title VII of the Civil Rights Act of 1964, and Massachusetts Equal Pay Act, G.L. c.149 §105A and G.L. c. 151B.

6.      At all times relevant Lahey acknowledges its knowledge and awareness of a duty to maintain a compensation system free of bias based upon gender or protected status. See, Lahey's Equal Employment Opportunity Policy Attached as Exhibit A. ("EEO" policy)

7.     Lahey has had a practice of discrimination on the basis of gender in compensation. The Office of Federal Contract Compliance Programs ("OFCCP") investigators determined that, from 2010 to 2012, the Lahey Clinic failed to pay certain female housekeepers — predominantly Haitian, Creole-speaking African Americans — at the same rate as their male counterparts. In its agreement with OFCCP, the Lahey Clinic agreed to pay the affected women $190,000 in lost wages, interest and salary adjustments.

8.     Lahey has had a practice of discrimination in hiring, which put them on notice of how implicit and conscious bias can cause discrimination in hiring.  In 2009, Lahey paid $136,000 to settle OFCCP allegations of hiring discrimination affecting 18 minorities — mostly Hispanic and Asian Americans — who applied and were rejected for secretarial positions.

9.     Lahey has a duty to maintain a workplace that is free of prohibited unlawful discrimination.

10.     Lahey has a duty not to discourage complaints of discrimination, and to investigate remedy and deter discrimination.

11.     The duty to pay equally without regard to gender is important because the policy to treat women equally in pay and terms and conditions of work is of vital importance and vindicates an important public policy of Massachusetts and the U.S., supplying women with revenue to support their families, to generate demand in the economy and to have fundamental fairness to advance in their careers equally to men.

12.     Lahey's Human Resources policies and practices must be practiced and administered to implement this duty.

13.     A Massachusetts employer must have written protocols and written practices to prevent, investigate and remedy gender bias and to ensure equal employment opportunity for males and females in hiring, in compensation and to avoid conduct which would deter a reasonable person from making a complaint of discrimination in good faith.

14.     In order to comply with equal pay and comparable pay law, an employer must review work actually performed, and not rely upon pay grades or titles to ensure equal or comparable pay for equal or comparable work.

15.     Failure to conduct a thorough and detailed self-evaluation of pay practices makes gender bias more likely and makes Lahey liable for liquidated damages for gender inequity prior to the filing of this suit.

16.     An employer may use education and experience relevant to the performance of the job, but must do so in an equal manner regardless of gender.

17.     Documented review of comparators' references and experience, reduces gender bias.

18.     Up through 2017, Lahey determined the rate for employees promoted into new positions based on an increase over the employee's then current rate. (MCAD response p.2). At all relevant times the Lahey pay rate at which Medical Technologists were hired would determine future merit and promotional increases.

19.     At all times relevant Lahey had defined salary grades for Medical Technicians, also identified as acute lab technicians, and since 2016, has labeled progressive levels of job grades for such Medical Technician as "L2" and Senior Medical Technician as "L3", with minimum, midpoint and maximum pay schedules for each "Acute Lab" positions. These pay grades were used to set pay and promotion decisions.

## Unequal pay of Kelly with male comparators

20.     As Kelly discovered by August 30, 2016, during the entirety of her tenure as

Medical Technologist in the Lab Stat department at Burlington location, at Lahey, Kelly

was paid approximately $2,000-$15,888 less per year than she would have been paid had

she been a male in similarly situated roles requiring similar skills where both a Male

Andrew Paiz was paid a higher initial rate based on his identical college degree, and a

male Nick Moore was hired into her position as she was being promoted out of it, and

was paid $7.00 more per hour than her initial hire rate.

21.     As a new graduate with a BS in Medical Technology, Kelly was  hired as a

Medical Technologist on September 8, 2014, by hiring manager Donna Richards, for the

night shift, with hourly base pay at $28.50 for the Night /third shift; at the time of her hire,

her base rate of pay included a $2.50/hour night shift pay increase built into that position.

22.     The night shift is more demanding than the day shift. Night shift medical

technologists may be asked to perform Microbiology, Chemistry, Hematology, Blood bank,

and Urinalysis tests under stress including surgery being underway with multiple high

priority time constraints with less supervision, while day shift assignments are usually in

only one department, with more available supervision. Ms. Kelly took exams and received

certification in every department and is entitled to work on the night shift as a generalist.

23.     Lahey also paid all-night shift employees a $6.25 night shift differential which was

not included in base pay.

24.     Throughout her employment, Lahey budgeted full -time employees, at 40 hours per

week, at 2080 hours per year. Kelly's base rate of pay was expected to initially generate

$59,280 regular pay.

5

25.     Kelly and all Lahey employees in her positions were eligible for overtime, and benefits which were determined or affected by the employee's base pay. Earned (sick or comp time), short term disability and life insurance benefits were calculated as a percentage of base pay only, initially at $28.50. Overtime was paid on each component of pay, base pay and night shift differential.

26.     The location of Kelly's work was Burl-41, Burlington Hospital.  Other locations, within Lahey, such as Peabody Hospital were not comparable in skill or responsibility and some of the more complex lab tests were sent the Burlington

27.     Lahey engaged in discrimination in hiring compensation based on gender.

28.     Kelly and three other women were hired in 2014 as new graduates with a bachelor's degree in Medical Technology which included course work in specialized areas and clinical rotations.

29.     Kelly was qualified with a Bachelors' Degree from an accredited institution and had interned at Lahey, in the Microbiology department, an intensive and rigorous training program, and she completed internships at other hospitals in Chemistry, Immunohematology, and Hematology. Kelly's Bachelor's degree included courses in anatomy and physiology, chemistry, applied chemistry, biology, both academic and laboratory courses, fundamentals of computers, Micro biology and pathology, physiological Chemistry and labs, I and II , introduction to Clinical lab sciences organic reactions and structure and lab, clinical hematology, clinical hematology lab, clinical lab instruments, and seminar, advanced hemostasis, medical bacteriology and lab, clinical chemistry and lab, and medical and clinical genetics, clinical virology/seriology, and molecular diagnostics; She also took a Mycology and parasitology practicum.  Kelly had interned at Lahey, in the

6

Microbiology department, an intensive and rigorous training program, and she completed internships at other hospitals in Hematology, Chemistry, Immunohematology, and Urinalysis. She graduated cum laude on the Dean's List.

30.     Kelly, who also had ten years' experience as a real estate broker before completing her BS in Medical Technology in 2014, attempted to negotiate and asked to be paid for her experience in Medical Technology internships during her bachelor's degree training.

31.     Donna Richards the Hiring manager for Lahey told Kelly in her hire to start in September 2014, that the new hire rate was non-negotiable as internships from school are not considered experience because they are a required part of one's degree.

32.     Lahey had a practice of preferential compensation for males. In September, 2014,  as Hiring manager for Lahey,  Donna Richards also  hired Andrew Paiz, a newly graduated male with equivalent qualifications at the same time period and was paid $26.50 per hour for an expected annual budget of $1040 more for his 40 hours on the day shift, with the male being given $0.50 /hour credit for experience on a Lahey internship during his BS training, a credit denied to Kelly and the women hired as new graduates.

33.     Lahey hired three other women as new bachelor's degree graduates in 2016, into similar Medical Technologist positions, but who did not work the night shift. The women received the same initial base pay as Kelly, of about $26.00/hour, without the $2.50 incentive pay built into the night shift position, or the additional $6.25-night shift differential. None of the women were paid a supplement paid to the male, Paiz, regardless of each having up to four prior internships in relevant Laboratory specialties which each had completed as part of their BS degrees.

34.     Lahey had a practice of preferential pay to males with lower educational certification. Before starting on September 8, 2014, based on her education and experience, Kelly was eligible to sit for exams as a Medical Laboratory Scientist by ASCP Certification including Hematology, Coagulation, Chemistry, Microbiology, Blood Bank, Urinalysis, Arterial Blood Gas analyzing, and Specimen Processing,  which she passed in  August 15, 2014, allowing her to work as a generalist. (ASCP Board of Certification Primary Source Verification).

35.     Ms. Kelly was certified by the American Society of Clinical Pathology "ASCP" Board of Certification, as a Medical Laboratory Scientist, issued of 8/15/2014 and has been maintained as valid through 9/30/2020. ASCP is the most influential leader in the field of medical laboratory professionals' certifications. The ASCP certification for Medical Laboratory Scientist is a higher certification than Medical Laboratory Technician or Technologist for a Mr. Nick Moore, see below.

36.     Two males paid more, had lower certifications. Nick Moore hired in 2016, paid $7/ more than her starting salary, submitted ASCP board of certification as a Medical Lab technician in the Certification maintenance program, a lower certification which did not permit him to perform as a generalist nor perform specific tests which required a bachelor's degree. Upon information and belief, Andrew Paiz, hired in 2014, who was paid $0.50 more for an internship which increase she was denied, was only certified in hematology.

37.     After her start date, because of Kelly's prior internship in microbiology, she needed only minimal Microbiology training.

38.     Upon information and belief, Paiz only completed and received certification in (1) one department, Hematology. Therefore, he is not permitted to work as a generalist as Kelly was but was paid more.

39.      By January 8, 2016, on the Lahey Salary Plan A100, which was applicable to acute labs, the job held by Ms. Kelly was labeled "L2" Medical Technologist /Sr. MLT and the department name was Lab Stat-BH 2011-38200, and the location was Burlington "BURL0005".  The Senior Medical Technologist position was labeled as "L3" in all hiring and pay documents.

**Hire of successor and promotion of Kelly**

40.      Lahey gave Kelly a pay increase of 2% to $29.07 as Medical Technologist after her 2015 annual review in which she exceeded performance standards in many areas and met expectations in all areas.

41.      Lahey's job description for the position of Medical Technologist made a bachelor's degree in Medical Technology equivalent to an associate degree and ten years previous full-time experience as a staff medical technician as the minimum qualifications for the position.

42.      Lahey may pay unequal compensation based on education, training or experience for work of a comparable character to the extent such factors are reasonably related to the particular job in question.

43.      After a person has been hired with minimum qualifications equal to a bachelor's degree, the additional years are not relevant to the particular job in question in evaluating equal pay for that position.

44.      In April of 2016, Donna Richards, the hiring manager for Lahey, hired a male, Nick Moore into the same Medical Technologist position at L2 on the night shift with her, and according to salary plan A100 paid him $35.50/ hour, also reporting to her,

9

while Kelly, who then had 19 months of experience at Lahey, was earning $29.07/hour in the same position.  Projected for a FTE at 40 hours, Kelly was scheduled to earn $60,465.60   while at Moore's rate of pay she would have earned  $73,840.

45.     Kelly had a bachelor's degree and nearly two years' experience at Lahey, (as well as her internship there, for which a male had been credited).  Moore had an associate degree and ten years previous experience external to Lahey and thus at time of hire, both had the equivalent minimum qualifications according to Lahey's own equivalence of education and experience. At the time of Moore's hire, Kelly had more experience, more certification, a higher degree and more seniority.

46.     If Moore had had less than ten years' experience, he would not have been eligible to be hired as a Medical Technologist at Lahey.

47.     At about the same time, between March 28, 2016  and effective May 28, 2016, Manager Donna Richards of Lahey promoted Kelly to Senior Medical Technologist, because of her seniority, her further training and increased responsibilities,  affirming her qualifications with the highest evaluation rank of "role model" and posted her new rate to be a 6.87% promotional raise based on her prior pay, (which was only $2/more per hour) for a rate of  $31.07. This was significantly less than Richards authorized Lahey to pay to Nick Moore, the male newly hired in April 2016 at $35.50 whom she hired into the lower, Medical Technologist position.

48.     As of May 28, 2016, Nick Moore was not eligible to be a Senior Medical Technologist and performed work of a lower skill effort and responsibility.

49.     Upon information and belief, Lahey's practice for promotion into the position of Senior Medical Technologist for the night shift required, for an applicant with an Associate's Degree, was to require ten years' previous experience before Lahey and Lahey tells Med Technologists with Associates Degree that they had to have an additional ten years' experience at Lahey as a staff medical technician as the minimum qualifications for the Senior position.

50.     As of May 28, 2016, when Kelly became qualified for and promoted into Sr. Medical Technologist and Moore was not qualified for that position, and his prior years of experience were not relevant to Ms. Kelly's pay.

51.     Based on Lahey salary plan A100, as of 1/1/2016,  Lahey paid Kelly at the bottom tenth of the minimum for her L2 lab position at time of hire at 1.07% of minimum, 1.09% of minimum at her first pay increase, in early 2016, while paying Moore in the third decile, at his hire, in April 2016, at 1.31% of minimum:

| Pay Adjustment | Job Grade | Dollars/hour | Percent of minimum |
|---|---|---|---|
| Kelly by January, 2016 | L2 | 29.07 | 1.07% |
| Kelly at promotion May 28, 2016 | L3 | 31.07 | 1.09% |
| Moore at hire, April, 2016 | L2 | 35.5 | 1.31% |

52.     Lahey had the duty to pay Kelly equally to the rate paid to Moore, at time of his hire, plus the same earned 2% raise on her first annual review and the same earned  6.87% raise at her promotion; had she received equal pay rate as Moore,

based on her evaluation and raises, she would have earned  projected pay as follows:

| Projected at Moore's hiring pay | Pay | % | Amount |
|---|---|---|---|
| 35.50 plus 2% raise | $36.21 | | |
| Projected rate of $36.21 at promotion with 1.069 raise | $38.71 | | |
| Percent of minimum in salary plan | | 1.36% | |
| Annual FTE rate projected at $38.71 | | | $80,514 |
| Difference from $31.07 ($64,625) with pay and promotion at Moore's projected rate. | | | $15,888 |

53.     Lahey exercised discretion to pay Moore at the higher end of the scale for technologists with equivalent or similar prior relevant work experience, despite his qualifications being limited to Chemistry with no certification, and lower education or experience in other necessary areas, and not being able to perform some tests restricted to graduates with a Bachelor's Degree.

## COUNT I

## RETALIATION UNDER G.L. C. 105A

54.     Kelly reasserts Paragraphs 1-53 as though fully set forth herein.

55.     In August, 2016, during the ordinary course and proper use of the company's intranet, looking into her position as a Senior Medical Technologist, Kelly discovered the entire employee census which included every employee's salary of Lahey which had been posted to its internal website, and discovered that the Nick Moore, the most recent hire into the position she had held as Medical Technologist, was paid $35.50, far more than the $31.07 paid to her. His base pay before the night shift differential was $33.00 and her hourly rate was 28.57 before the night shift differential.

56.     Kelly discovered that Lahey paid the male, Moore at $33.00/hour, more than the hourly rate before any shift differential paid to other women, employed at the higher rank of Senior Medical Technician, also hired in 2014 with Bachelor's Degrees which were the equivalent minimum qualification to his Associates Degree and ten years' experience, without the night shift differential:

SA 2          $29.40 Stacy Aptiz,

MK            $28.40 Meaghan Karolides

GN            $29.09 Georgina Nicolo

KY            $30.39 Khanin Yu

And Lahey paid Moore more than another female Med Tech hired in 2014

AR            $27.05 Arianna Reed

56.     Upon information and belief, Lahey gave preference to a  male with an associate's degree over that of a female with an associate's degree, for example Astrid Sosa, a female with 17 years of Lahey seniority and a promotion into Senior Tech was paid almost equal to, but slightly less than Nick Moore with only 11 years of external experience;   By 2017 he had 12 years' experience in all as a Medical Tech, and one year at Lahey, yet was paid $33.66 to Astrid's Sosa's $33.39  as a Senior Medical Tech before the night shift differential.

57.     Ms. Donna Richards left Lahey on May 31, 2016. Thereafter, Linda Capone became the Director of the Department and in November 2016, Ms. Kelly began to report to Lauren Colbert, a Manager in the Department.

58.     Kelly complained to Lahey orally and in writing about their gender-based pay disparities. On August 25, 2016, Ms. Kelly and a co-worker approached Ms. Capone

claiming that they believed they were paid unfairly based on confidential salary information they had obtained from Lahey's internal website.

59.     On or about August 30, 2016, Pat De Vivo, a Human Resources Business Partner and Ms. Capone met with Ms. Kelly to give a reply to her pay concerns. Mr. De Vivo told Ms. Kelly that he had reviewed her pay history with the compensation team in Human Resources and they believed that Ms. Kelly's pay was equitable based on her combined years of experience of just 2 years at Lahey, and relied upon Mr. Moore's years of experience before Lahey.

60.     Kelly raised the issues again internally with the Lahey Hotline.

61.     On December 5, 2016, the Director of Human Resources, Kate Hennigar, offered to meet with Ms. Kelly to discuss her concerns.

62.     On February 7, 2017 Ms. Hennigar and Ms. Capone met with Ms. Kelly to review her concerns.

63.     To date, Lahey has taken no steps towards remedying the gender-based pay disparities.

64.     On information and belief, as a direct result of Ms. Kelly's complaint, on about March 22, 2017, and continuing to the present,  Lahey lowered the hiring pay, promotional raises and benefits and earned pay of all medical technologists and Senior Medical Technologists by lowering their base pay from including the $2.50 which was built into the night shift, and basing raises, earned pay, short term disability and other benefits on the lower base pay, and other steps to lower the pay of those holding those positions.

65.     Each and every paycheck for base pay going back three years was less than the rate paid to Plaintiffs' similarly situated male counterparts and/or the successor in her position, Nick Moore, even if that employee left the employment of Lahey.

66.     But for her gender, Kelly would have been paid at a rate equal to her promotional raises as applied to the pay of the male, Nick Moore, who was performing comparable work or lesser work.

67.     Before her complaint, Kelly was praised for her teamwork, assistance to colleagues and training of others, and was selected as the safety officer. But for her complaint of unequal pay, Kelly would have enjoyed an environment free of disparagement, where before her complaint she was valued in the highest rank possible as a "role model" and after her complaint Lahey described her as a negative impact on morale solely because of her pay complaint and her concerns about the safety and effectiveness of a colleague, where but for her complaint she would have been thanked and appreciated.

68.     On information and belief, the unlawful pay practices and retaliatory failure to adequately investigate and the disparagement of Kelly has continued and continues to benefit Lahey financially, and discourage complaints of unequal pay.

## COUNT II

## GENDER-BASED PAY DISPARITY UDNER M.G.L. 149 §105 A (MEPA)

69.     Plaintiffs reassert Paragraphs 1-68 as though fully set forth herein.

70.     At all times relevant, Plaintiff has been a covered female employee under G.L. c. 149 §105A.

71.     At all times relevant, Lahey has been a covered employer under G.L. c. 149 §105A.

72.     At all times relevant, before Kelly complained, Lahey paid Andrew Paiz a $0.50 more per hour for substantially equal work.

15

73.     At all times relevant after the hire of Nick Moore,  Lahey paid Kelly a salary less than the rate paid to male Medical Technologist Nick Moore for comparable or lesser work, who was either a male employee, who replaced her in her position, or was a former employee who was paid more.

74.     Lahey paid Kelly a salary less than that paid to her if she had been a male paid the rate at which it had paid or was paying Nick Moore.

75.     Lahey's **unlawful** conduct has caused Kelly damages, including lost wages and benefits, emotional distress damages, and has incurred attorney's fees and costs and will seek other damages to be determined at trial.

76.     Lahey has failed to conduct a thorough and detailed prior to the filing of this suit and has failed to make any reasonable steps to reduce the pay disparity and is therefore liable for unpaid wages and an equal amount in liquidated damages for all pay periods for the past three years.

## COUNT III

## RETALIATION UNDER M.G.L. 149 §105 A (MEPA)

77.     Plaintiffs reassert Paragraphs 1-76 as though fully set forth herein.

78.     At all times relevant, Plaintiff has been a covered female employee under G.L. c. 149 §105A.

79.     At all times relevant, Lahey has been a covered employer under G.L. c. 149 §105A.

80.     Lahey had a duty under G.L. c.149 §105A not to retaliate against Kelly for seeking to enforce her rights under the statute.

81.     Kelly reasonably and in good faith opposed what she reasonably believed was gender discrimination in pay.

82.     After Kelly complained of pay inequity, Lahey retaliated by lowering the promotional pay increase of a male, Andrew Paiz on his promotion, from $2.00 /hour to $1.50/hour,  a salary less than that paid to prior Medical Technologists promoted to Senior Medical Technologists, unlawfully lowering his reasonably expected pay in order to remedy the pay inequity with Ms. Kelly.

83.     Because Kelly complained of unequal pay, in about March 22, 2017, Lahey retaliated by moving the $2.50 built into the lab night shift  base salary rate, thereby lowering the earned compensation, benefits such as short term disability and life insurance, and promotional or merit increases going forward for Kelly and all similarly situated employees.

84.     Because Kelly complained of unequal pay, Lahey retaliated by telling her, who had been praised as a role model, trainer, helper of others and great team player,  that she was a negative force and causing morale problems, when this was a direct description of Lahey's negative view of her protected conduct.

85.     Lahey discouraged Kelly and others from complaining by conduct including the above referenced conduct, and by failing to investigate remedy and deter pay inequity on the basis of gender.

86.     Lahey's **unlawful** adverse actions have caused Kelly damages, including lost wages and benefits, emotional distress damages, medical treatment and medication costs, and has incurred attorney's fees and costs and will seek other damages to be determined at trial.

87.     Lahey is liable all damages incurred, and for liquidated damages for any wages lost through retaliation, for all pay periods for the past three years,

17

## COUNT IV

### GENDER DISCRIMINATION UNDER G.L. c.151B

88.   Plaintiffs reassert Paragraphs 1-87 as though fully set forth herein.

89.   At all times relevant, Plaintiff has been a covered female employee under G.L. c. 151B § 4 (1)

90.   At all times relevant, Lahey has been a covered employer under c. 151B § 4 (1) and 4(4) and 4(5).

91.   Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and  enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

92.   As a direct result, Plaintiff Kelly has been damaged in lost pay and benefits, suffered emotional distress, lack of the enjoyment of an environment free of discrimination, has incurred attorney's fees and costs and will seek other damages.

93.   Lahey's conduct was egregious, outrageous and repeated, in light of past violations, the egregious nature of paying Moore more than Kelly even after her promotion to Senior Medical Tech, as a role model to others, where her performance was stellar and Moore was unable to perform tests in a timely and safe manner.  Lahey is liable for punitive damages to remedy and deter such outrageous discrimination.

## COUNT V

## RETALIATION UNDER G.L. c.151B

94.     Plaintiffs reassert Paragraphs 1-93 as though fully set forth herein.

95.     At all times relevant, Plaintiff has been a covered female employee under G.L.

c. 151B § 4 (1 and 4(4) and 4(5),

96.     At all times relevant, Lahey has been a covered employer under c. 151B § 4 (1)

and 4(4) and 4(5).

97.     Kelly in good faith, claimed that Lahey had engaged in discrimination on the

basis of gender violating their duty to maintain an environment free of discrimination,

evidenced by disparate treatment of the plaintiff compared to similarly situated males,

gender bias towards other members of the protected class, repeated conduct in hiring

and gender discrimination, stereotypic implicit bias serving to ignore or discount

experience of women and  enhance and assume the qualifications of men, failure to

follow ordinary procedures necessary to ensure the elimination of bias, and statistical

evidence of pay disparities between men and women.

98.     Lahey was aware of her complaints and purported to examine them.

99.     As a direct result of her protected conduct Plaintiff Kelly has been damaged in

lost pay and benefits, by the lowering of base pay by elimination of the night incentive

pay from the base pay from which benefits and promotion rates are calculated, has

suffered emotional distress, affecting her sleep, causing anxiety, loss of faith in the

future of her career, exhaustion at trying to perform at an exceeds level while being

attacked with false negative criticism, fear that any mistake will cause her to be fired,

lack of the enjoyment of an environment free of discrimination, fear that she will be

fired when she was met with an exit package instead of a remedy for unequal pay, and

has incurred attorney's fees and costs and will seek other damages.

100.    In light of past violations, the egregious nature of lowering Kelly's base pay and that of all her peers,  even after her promotion to Senior Medical Tech, where her performance was known to be stellar Lahey is liable for punitive damages to remedy and deter such outrageous retaliation intended to deter and discourage her complaints and those of others similarly situated.

## COUNT VI

## GENDER DISCRIMINATION UNDER TITLE VII

101.    Plaintiffs reassert Paragraphs 1-104 as though fully set forth herein.

102.    At all times relevant, Plaintiff has been a covered female employee under 42 U.S.C. 2000 (e) et seq.

103.    At all times relevant, Lahey has been a covered employer under 42 U.S.C. 2000 (e) et seq.

104.    Kelly believes in good faith that Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and  enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

105.    As a direct result, Plaintiff Kelly has been damaged in lost pay and benefits, suffered emotional distress, lack of the enjoyment of an environment free of discrimination, has incurred attorneys' fees and costs and will seek other damages.

106.    In light of past violations, the egregious nature of paying Moore more than Kelly even after her promotion to Senior Medical Tech, as a role model to others, where her performance was stellar and Moore was unable to perform tests in a timely and safe manner, Lahey is liable for punitive damages to remedy and deter such outrageous discrimination.

## COUNT VII

## RETALIATION UNDER TITLE VII

107.    Plaintiffs reassert Paragraphs 1-107 as though fully set forth herein.

108.    At all times relevant, Plaintiff has been a covered female employee under 42 U.S.C. 2000 (e) et seq.

109.    At all times relevant, Lahey has been a covered employer under c. 42 U.S.C. 2000 (e) et seq.,

110.    Kelly in good faith, opposed what she reasonably believed, that Lahey had engaged in discrimination on the basis of gender violating their duty to maintain an environment free of discrimination, evidenced by disparate treatment of the plaintiff compared to similarly situated males, gender bias towards other members of the protected class, repeated conduct in hiring and gender discrimination, stereotypic implicit bias serving to ignore or discount experience of women and  enhance and assume the qualifications of men, failure to follow ordinary procedures necessary to ensure the elimination of bias, and statistical evidence of pay disparities between men and women.

111.    Lahey was aware of her complaints and purported to examine them.

112.    In violation of 42 U.S.C. § 2000e-3(a), as a direct result of her protected conduct Plaintiff Kelly has been damaged in lost pay and benefits, by the lowering of base pay

by elimination of the night incentive pay from the base pay from which benefits and promotion rates are calculated, has suffered emotional distress, affecting her sleep, causing anxiety, loss of faith in the future of her career, exhaustion at trying to perform at an exceeds level while being attacked with false negative criticism, suffered resulting fear that any mistake will cause her to be fired, lack of the enjoyment of an environment free of discrimination, has incurred attorney's fees and costs and will seek other damages.

113.    In light of past violations, the egregious nature of lowering Kelly's base pay and that of all her peers,  even after her promotion to Senior Medical Tech, where her performance was known to be stellar Lahey is liable for punitive damages to remedy and deter such outrageous retaliation intended to deter and discourage her complaints and those of others similarly situated.

## COUNT VIII

## VIOLATION OF THE EQUAL PAY ACT

114.    Plaintiffs reassert Paragraphs 1-114 as though fully set forth herein.

115.    Lahey is an employer covered by the Equal Pay Act, 29 U.S.C. §206(d)

116.    Lahey as an employer having employees subject to the provisions of that section, for the reasons asserted above, discriminated, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

117.    As a direct and proximate result, the Plaintiff was injured, as asserted above.

118.    Under the Equal Pay Act, Lahey is liable to pay unpaid wages and an equal amount in liquidated damages, attorneys fees interest and costs as asserted above, and injunctive relief as the court may allow.

## **Prayer for Relief**

Plaintiffs respectfully requests a speedy trial before a jury.

WHEREFORE, Plaintiffs respectfully request that, and moves this Court to:

(A) Determine the damages sustained by Plaintiffs as the result of Defendant's discrimination on the basis of gender and in violation of MEPA, §105A(b) , and the Equal Pay Act as unpaid wages and remuneration and an equal amount of liquidated damages against Defendant and in favor of Plaintiffs, together with such prejudgment interest as may be allowed by law;

(B) Determine the damages sustained by Plaintiffs as the result of Defendant's discrimination in retaliation for asserting her right,  in violation of MEPA, §105A(d)  , G.L. C. 151B, Title VII and the Equal Pay Act and punitive damages as may be permitted against Defendant and in favor of Plaintiffs, together with such prejudgment interest as may be allowed by law;

(C) Award Plaintiffs costs and disbursements in this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees; and,

(D) Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Jeannine Kelly,

By her attorneys,

_____
Elizabeth A. Rodgers, P.C. BBO #424360
Philip Gordon, Esq. BBO #630989
Benjamin Flam, Esq. BBO #671853
Gordon Law Group LLP
585 Boylston Street
Boston MA 02116
Tel: 617-536-1800
Fax: 617-536-1802
Home Office: 857-928-4033
erodgers@gordonllp.com
pgordon@gordonllp.com
bflam@gordonllp.com

Exhibit A

| | |
|---|---|
| Policy Approved by: Vice President of Human Resources, Signature on file<br>Date: 11/28/2016<br>Date of Approval/Revision: 11/1/99, 2005, 6/14/2007, 2008, 2012,<br>2015, 2016 | **Policy Number<br>E-5** |

## Equal Employment Opportunity

| Employment | Daily<br>Worklife | Time<br>Away | Compensation<br>(Pay &<br>Benefits) | Work/Life<br>Balance |
|---|---|---|---|---|

*Overview*:     Lahey Hospital & Medical Center (LHMC) is committed to a workplace that is free from prohibited unlawful discrimination. Human Resources policies and practices reflect this commitment.

*This policy applies to*:  All colleagues

> *Manager Responsibility*: Understand and actively demonstrate compliance with this policy.  Communicate to colleagues.
>
> *Colleague Responsibility*: Understand and comply with policy.

---

### Purpose

To help ensure that LHMC's Human Resources policies and practices are administered without regard for race, color, religion, sex, age, national origin, disability, genetic information, sexual orientation, gender identity ancestry, or protected veteran status, and any other legally protected characteristics under Federal, state or local laws.

---

### Definitions

Equal Employment Opportunity     All Human Resources policies and practices will be administered without regard for race, color, religion, sex, age, national origin, disability, genetic information, sexual orientation, gender identity, ancestry, or protected veteran status and any other legally protected characteristics under Federal, state or local laws.

1

**Policy**

- All colleagues and job candidates are guaranteed equality of employment opportunity (EEO). This means that LHMC will not discriminate against any colleague or candidate on the basis of race, color, religion, sex, age, national origin, disability, genetic information, sexual orientation, gender identity, ancestry, or protected veteran status and any other legally protected characteristics under Federal, state or local laws. Furthermore, LHMC will provide equal employment opportunity to individuals with disabilities and protected veterans in all phases of the employment process and in compliance with applicable federal, state and local laws and regulations.

- All recruitment, selection, placement and training decisions made by management will made on a non-discriminatory basis and will be based solely on an individual's job-related qualifications and abilities with respect to essential job functions.

- All colleagues who apply for a promotion or transfer will be given equal consideration. Assuming that an opening exists, the qualifications of a colleague for a promotion or transfer will be assessed on the basis of the individual's knowledge, skills and ability with respect to essential job functions. In addition, the promotion or transfer decision will be considered in light of the colleague's past disciplinary issues, if any.

- All other Human Resources policies and practices of LHMC, including but not limited to, compensation, benefits, corrective action, and safety and health programs, as well as social and recreational activities, will be administered and conducted without regard to a colleague's race, color, religion, sex, age, national origin, physical and mental disability or handicap, genetic information, sexual orientation, gender identity, ancestry, pregnancy, childbirth or related medical condition, or veteran status, as required by law.

- LHMC will take all necessary steps to ensure that each colleague's work environment is free of unlawful discrimination. This includes ensuring that the workplace is free of prohibited behavior deemed by LHMC to be harassment based on a colleague's race, color, religion, sex, age, national origin, physical and mental disability or handicap, genetic information, sexual orientation, gender identity, ancestry, pregnancy, childbirth or related medical condition, or veteran status.

- LHMC will consider making reasonable accommodations for any colleague determined to possess a qualified physical or mental disability or handicap in order to enable them to perform the essential functions of the job.

- LHMC will continually review its Human Resources policies and practices to ensure that all managers and supervisors adhere to its commitment to EEO principles.

2

- Colleagues will not be subjected to discrimination, unlawful retaliation or harassment because they have raised an allegation of discrimination, requested an accommodation due to a disability or religious belief/practice, or for participating in an investigation or compliance review related to an allegation of any conduct covered by this EEO policy.

- Colleagues who have EEO-related questions, problems or complaints should communicate their concerns to their manager or supervisor or to Human Resources.

### Procedure

| Responsible Person | Action |
|---|---|
| Manager/Supervisor | 1. Ensures that all employment decisions are in accordance with LHMC EEO policy. |
| Human Resources | 2. Monitors compliance with EEO policy and responds to individual situations as necessary. |
| | |

3

# EXHIBIT F

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Jeannine N. Kelly

**ADDRESS:** 13 Dogwood Circle

Pelham NH 03076

**COUNTY** Middlesex

**DEFENDANT(S):** Lahey Hosptial & Medical Center

**ATTORNEY:** Elizabeth A. Rodgers

**ADDRESS:** The Gordon Law Group, LLP

585 Boylston Street

Bsoton, MA 02116

**ADDRESS:** 41 Mall Road, Burlington, MA 01805

**BBO:** #424360

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

**CODE NO.** B22

**TYPE OF ACTION (specify)** Mass. Equal Pay Act -Unequal Compensation/C

**TRACK** F

**HAS A JURY CLAIM BEEN MADE?** ☒ YES ☐ NO

**\*If "Other" please describe:**

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ........................................ $ _____
2. Total doctor expenses .......................................... $ _____
3. Total chiropractic expenses .................................. $ _____
4. Total physical therapy expenses ............................ $ _____
5. Total other expenses (describe below) .................... $ _____

**Subtotal (A):** $ _____

B. Documented lost wages and compensation to date ........................................ $ _____
C. Documented property damages to dated ........................................ $ _____
D. Reasonably anticipated future medical and hospital expenses ........................................ $ _____
E. Reasonably anticipated lost wages ........................................ $ _____
F. Other documented items of damages (describe below) ........................................ $ _____
Liquidated damages in equal amount, loss of quality of life from discrimination and retaliation.Attorneys's fees

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Plaintiff a Senior Medical Technicial is paid approximately $15888 less than a comparable male, a Medical Techician paid $

**TOTAL (A-F):$** >25,000.

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

**TOTAL: $** _____

**Signature of Attorney/Pro Se Plaintiff: X** _____   **Date:** 8/28/19

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** _____   **Date:** 8/28/19

# EXHIBIT G

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1981CV02534

_____Jeannine N. Kelly_____ , PLAINTIFF(S),

V.

LAHEY CLINIC HOSPITAL, INC. ,DEF ENDANT(S)



**SUMMONS**

THIS SUMMONS IS DIRECTED TO _LAHEY CLINIC HOSPITAL, INC.   . (Defendant's name)

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _Middlesex Superior___ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
     the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
     opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
     to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
     extension of time in writing from the Court.**

2.   **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
     copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
     a.  Filing your **signed original** response with the Clerk's Office for Civil Business,Middlesex Superior Court, 200 Trade Center
         Woburn, MA 01801  (address), by mail or in person, **AND**
     b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
         address: Elizabeth Rodgers, P.C., Gordon Law Group LLP, 585 Boylston Street, Boston MA 02116
         .

3.   **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer
     must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
     Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
     use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
     based on the same facts or transaction described in the Complaint, then you must include those claims
     in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
     lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
     Answer or in a written demand for a jury trial that you must send to the other side and file with the
     court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
     **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
     to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
     you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
     described in the rules of the Court in which the complaint was filed, available at
     www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____ November _____ , 20 19 .

_____
Michael A. Sullivan
Clerk-Magistrate

Note:  The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____ , 20___ , I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____
_____
_____

Dated:_____ , 20_____        Signature: _____

**N.B.      TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

| |
|---|
| , 20___ |

# EXHIBIT H

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                     SUPERIOR COURT

JEANNINE KELLY,
            Plaintiff

        v.

LAHEY HOSPITAL AND MEDICAL
CENTER,        Defendant

**RECEIVED**

11/26/2019

**Civil Action No.: 1981CV02534**
**ACCEPTANCE OF SERVICE**

Please take notice that the attorneys for the defendant, Lahey Hospital and Medical Center,[1]

Rachel Reingold Mandel
Francesco A. DeLuca
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: 617-994-5707
Facsimile: 617-994-5701
rachel.mandel@ogletree.com
francesco.deluca@ogletree.com

have been authorized to accept service in the above referenced matter on behalf of the defendant, Lahey Hospital and Medical Center, and does hereby accept service of the Summons and Complaint in the above entitled matter on behalf of Lahey Hospital and Medical Center, with like effect of personal service upon said defendant. Defendant's counsel received the Summons, Tracking Order, and First Amended Complaint by mail on November 19, 2019 and received the Complaint and Civil Cover Sheet by e-mail on November 25, 2019.

---

[1] Defendant's name is incorrect in the caption of the Complaint. Plaintiff's counsel intends to file an assented-to motion to address that issue in the near future. However, for the purposes of this document, the parties use Defendant's name as stated in the caption.

1

IC

LAHEY HOSPITAL AND MEDICAL CENTER:

By:

_Francesco A. DeLuca_

Rachel Reingold Mandel (BBO #660495)
Francesco A. DeLuca (BBO #692138)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: 617-994-5707
Facsimile: 617-994-5701
rachel.mandel@ogletree.com
francesco.deluca@ogletree.com

Dated: November 26, 2019

40768894.1

2